[Crim. No. 5600. Second Dist., Div. One. Sept. 5, 1956.]

THE PEOPLE, Respondent, v. PAUL BURTON POTTER, Appellant.

E. R. Williams for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the district attorney of Los Angeles County, defendant was charged with the crime of robbery, in that on January 28, 1955, he took by means of force and fear from the person and immediate presence of Orville Henderson, Jr., the sum of $1,350.50. It was charged that at the time of the commission of said crime defendant was armed with a deadly weapon. It was further alleged that defendant was previously convicted of the following felonies: Robbery, on or about January 3, 1933, county of Santa Clara; robbery, on or about May 26, 1942, county of Los Angeles; robbery, on or about November 16, 1945, county of Los Angeles; escape (Pen. Code, § 4531), on or about November 16, 1945, county of Los Angeles. With respect to the four prior felonies above alleged, it was also charged that defendant suffered a term of imprisonment for each.

Defendant pleaded not guilty to the crime charged against him and subsequently admitted the prior felony convictions alleged.

Trial was had before a jury resulting in a verdict finding defendant guilty of robbery and finding it to be robbery of the second degree. The jury found the charge that defendant was armed at the time of the commission of the offense not true.

Motion for a new trial was denied and judgment was pronounced by which defendant was sentenced to state prison. He was found to be an habitual criminal.

From the judgment of conviction and from the order denying his motion for a new trial defendant prosecutes this appeal.

Since defendant does not question the sufficiency of the evidence to sustain his conviction, we deem the following a sufficient epitome of the evidence necessary for consideration and determination of the sole issue advanced for reversal of the judgment and order. Orville Henderson, Jr., testified that he was assistant manager at the Beach Grocery, 3104 Glendale Boulevard, Los Angeles, and was so employed January 28, 1955. On that date the grocery was held up. It occurred at about 8:45 p. m. Mr. Henderson was in the liquor department when defendant came up to him and asked him for a certain brand bottle of liquor. As Mr. Henderson was ringing up the purchase defendant said that this was a holdup, and that Mr. Henderson should do what defendant said and no one would get hurt. Mr. Henderson was sure that defendant had a gun. It was dark-colored and was down beside his

pocket. Defendant told Mr. Henderson to give him the money. Mr. Henderson opened a small safe in the liquor department but defendant told him to go to the big safe. This was around the corner in the back room. Mr. Henderson went there followed by defendant. There Mr. Henderson was required to open the safe, which he did by combination. As Mr. Henderson was starting to get the money out defendant said to let him get in there, that he wanted it all this time. Defendant went in and put the money in a paper sack, then had Mr. Henderson closed the safe. The money came to approximately $6,400. Defendant then had Mr. Henderson stand in the back room.

After instructing Mr. Henderson to remain there defendant departed. At the time defendant first came up to the liquor department where Mr. Henderson was, the former was pushing a market basket in front of him.

Alphonso Medrano testified that he was employed at the Beach Grocery on the night in question. That between 8 and 8:30 p. m. defendant approached him and asked who the manager was. The witness said, "Orville." Defendant asked the witness to pronounce and spell the name, which he did.

Gordon Lovell testified he was employed at the Beach Grocery on the occasion here in question. That he saw defendant enter the store and pick up a market basket. Later defendant approached him and inquired where Mr. Orville was. The witness pointed to Mr. Henderson saying that was the person. The witness saw defendant and Mr. Henderson going toward the rear of the store.

Donald Love, another employee at the store testified that he saw defendant walking in the front door of the market between 8 and 8:30 p. m. and get a basket or push cart. He next saw defendant at the liquor counter asking Mr. Henderson for a bottle of whiskey. Later, as defendant was leaving the rear room the witness saw Mr. Henderson facing the back door in a corner. Following a conversation with Mr. Henderson, the witness telephoned the police department.

Testimony of police officers disclosed that appellant's palm print was on the market basket in question. The market basket was pointed out to the police by Mr. Henderson at the market at about 9:30 p. m. that night.

Robert Perry, a police officer for the city of Los Angeles, was one of the investigating and arresting officers in the case at bar. The arrest was made on the early morning of February 1st at 5640 Santa Monica Boulevard, which is the Harvey

Hotel, in Room 304. Officer Perry went to that location with some other officers. The previous day he had talked with Mr. Henderson and Mr. Lovell.

At the same time Officer Perry had spoken with Mr. Henderson and he had about 50 or 60 photographs with him. Included in the photographs was one of defendant; Mr. Henderson picked out the photograph of defendant as the person who allegedly held him up on January 28th. It was somewhere between 9:30 and 10 a. m. that Officer Perry spoke with Mr. Henderson January 31st, and the conversation lasted approximately 35 to 40 minutes. That afternoon the officer spoke with Mr. Lovell, another store employee, and also had with him the 50 or 60 photographs. Mr. Lovell picked out the photograph of defendant as the person he had seen in the store on the occasion in question with Mr. Henderson. The officer also spoke with Mr. Love who picked out the photograph of defendant as having been in the market on the occasion in question; and he spoke with another person employed at the market, a Mr. Fisher, who identified defendant from the photograph as having been in the store on that occasion. It was about 4 p. m., January 31st, when the officer left the market after talking to various people there. The officer went to the central robbery division in the Los Angeles city hall and conferred with specialized detectives respecting the case. At this conference he received some information as to where defendant might be found. The officer stayed in the city hall until about 10:30 or 11 p. m., in conference, and searching records in the records and identification section. Thereafter the officer went to a known address of defendant on Riverside Drive. He did not find him there. It was between 11 and 12 p. m. when the officer went to the Riverside Drive address. At this address he learned of another address, which was the one on Santa Monica Boulevard. After obtaining detectives to stay at the Riverside Drive address, the officer proceeded to the address where the arrest was made. The time was about midnight of January 31st. The officer did not obtain a warrant of arrest. At the Santa Monica street address the officer got a key from a person who stated he was the manager. The officer went up to the room in question and put the key in the door. The officer did not knock and ask admittance. He suspected defendant was in the room. The officer went to this room for the purpose of arresting defendant on the basis of the information he had previously received. The

officer opened the door and entered. He found defendant in bed. Four other officers accompanied Officer Perry. On turning on the lights, Officer Perry told defendant to get his hands up, that he was under arrest. The officer found over a thousand dollars in various denominations around the room. He also found what appeared to be some automobile keys in the room. He asked defendant if they were his keys and the latter said they belonged to "the old lady." The officer asked defendant if he did not have possession of the car to which the keys belonged and defendant said he did. He said that the car was in the parking lot. The officer then went down to the hotel parking lot, immediately adjacent to the hotel, where he saw a Dodge automobile. One of the keys fitted the automobile. At this time defendant was in custody of the other officers a short distance away. The officer opened the trunk of the automobile and found a .38 caliber loaded Smith and Wesson revolver.

Officer Perry had a conversation with defendant in relation to the pistol. The conversation took place in the early morning hours of February 1, 1955, following the arrest, at the Los Angeles city hall, in the robbery offices. Officer Perry showed the gun to defendant and asked him if it was his. He said it was, that he had bought it in Las Vegas.

When Officer Perry went to Room 304 where the arrest took place, he searched the entire room together and individually with the other officers. The sum of money, totaling $1,706, was all the money found in the room with the possible exception of small change which defendant kept for cigarettes.

Testifying as a witness in his own behalf, defendant claimed to have known Mr. Henderson prior to January 28, 1955. He maintained that when he had finished making a liquor purchase from Mr. Henderson on the occasion in question Mr. Henderson handed him a package and asked him to hold it for him. He denied that he had a gun in his possession at the time. He testified further that Mr. Henderson asked him to come into the back room for a moment; that there Mr. Henderson asked if he would hold the package and said that he would explain later; that he consented; that Mr. Henderson knew where he (defendant) lived and said he would be there to pick it up. Defendant related that after he left the market he went to 2725 Riverside Drive and saw a Mrs. Holbrook before going home, that is to his hotel on Santa Monica Boulevard; that Mr. Henderson did not come to defendant's apartment; that he was in bed asleep when the police came; that

before the officers arrived, defendant had opened the package which Mr. Henderson had given him and found it to contain a stack of money; that he tried to count the money but could not do so because he had been drinking and was trying to take care of some correspondence; that he had about $600 of his own money in his wallet and that he left the rest of the money where he opened the package; that he had some keys to an automobile in the room; that some time in the latter part of 1954 he had told Mr. Henderson of his record for robbery. On cross-examination defendant acknowledged that he had suffered four prior convictions of felony (three instances of robbery and one of escape).

Following the arrest of defendant, the officers had several conversations with him but they need not here be narrated.

Appellant's sole contention on this appeal is that the admission into evidence of the money and weapon taken from him constituted prejudicial error in that this property was seized in a search that was not incident to a valid arrest. He concedes that if the arrest was valid, then the search incident to the arrest, both of the room and the automobile, was valid.

Appellant concedes that the officers had reasonable cause to believe that the former had committed a felony and were therefore authorized to arrest him pursuant to the provisions of section 836, subdivisions 3 and 5 of the Penal Code, but challenges the validity of the manner in which the arrest was made because of failure to comply with the provisions of Penal Code, section 844, which provides that in making an arrest for a felony, an officer may break open the door of the house in which the person to be arrested is, or in which he has reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired.

We are satisfied that a complete answer to appellant's claim in this regard is found in *People* v. *Maddox*, 46 Cal.2d 301, 306 [294 P.2d 6], wherein it is said: "It must be borne in mind that the primary purpose of the constitutional guarantee is to prevent unreasonable invasions of the security of the people in their persons, houses, papers, and effects, and when an officer has reasonable cause to enter a dwelling to make an arrest and as an incident to that arrest is authorized to make a reasonable search, his entry and his search are not unreasonable. Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees

are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844. *Moreover, since the demand and explanation requirements of section 844 are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose."* (Emphasis added.)

Appellant's contention that the evidence does not show any facts known to the officers which would justify a good faith belief on their part that compliance with Penal Code, section 844, was excused and that the record does not reflect a showing that the officers had some reason for going into the particular room occupied by appellant in search of him, is without merit. ■ In the instant case, appellant had been identified as the robber by three persons present when the robbery was committed and were aware of the fact that appellant had been convicted of four prior felonies, three times for robbery and once for escape (Pen. Code, § 4531). Under these circumstances, we are persuaded that it was not unreasonable for the officers to exercise considerable caution and to enter appellant's apartment in the manner in which they did. We are satisfied that under the facts of the instant case the failure to comply with Penal Code, section 844, was excused and justified the admission at the trial of the evidence obtained in the search.

For the foregoing reasons, the judgment and the order denying defendant's motion for a new trial are, and each is affirmed.

Doran, J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 4, 1956.