[Crim. No. 1220.   Fourth Dist.   Feb. 27, 1957.]

THE PEOPLE, Respondent, v. FRANK LITTLEJOHN, Appellant.

Jefferson E. Hahesy, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant was convicted by a jury on one count of an information charging violation of section 11500 of

the Health and Safety Code (unlawful possession of heroin), and on three counts of another information charging violation of section 11714 of the Health and Safety Code (unlawful furnishing of heroin to a minor) on three separate occasions. He admitted three prior convictions.

Defendant's appeal is predicated primarily on the contention that the trial court erroneously, over timely objections, admitted evidence which was unlawfully obtained without a search warrant and was prejudicial to this defendant.

Defendant and appellant was living at a house in Fresno with his sister Lydia Ruiz and one Ernest Johnson. Two members of the narcotics squad previously learned of an all-points bulletin in reference to the theft from San Francisco of a green Mercury Montclair coupé with a certain Washington State license number, and that one Janet Jones was a suspect and had been charged with stealing it. This car had been previously seen by the officers around Fresno being driven by defendant and also by one Dolores Villarreal. The officers received word from Tacoma, Washington, that the car was registered to one Yippee Fung of Seattle, who had moved to San Francisco. One officer testified that other officers working the Chinatown beat, called him on two or three occasions and told him they had information that defendant was peddling narcotics from the vehicle and that he had questioned defendant one night at a drive-in while seated in the car with one Dolores Villarreal, whom he took to be Janet Jones; and that defendant then told him the car belonged to Janet Jones. Upon this information and the fact defendant and Lydia were registered as cotenants at this house, these officers arranged a stake-out in a nearby warehouse and watched the operations of defendant and the occupants of the house over a period of several days. On the evening of April 7th, at about 10 o'clock this car drove up and was parked in a carport. Two women, Dolores and Lydia, stepped out. When just inside the screen-door, the officers approached, exhibited their badges and told them they were under arrest on suspicion of car theft. They had neither a warrant of arrest nor search warrant. There is some conflict as to whether the screen-door had been closed when the officers walked in. However, if it was closed the officers opened it and stepped inside. Defendant, Johnson and one Helen Gonzales were there seated in the living room. Defendant was questioned about the car and he said it belonged to Janet Jones, a friend of his in San Francisco, that she

had loaned it to him, and that his license was in the car. Defendant was told by the officer that defendant had no license in the car because he knew it had been revoked some months previously. Without objection by anyone, one officer looked through the house to see if Janet Jones was there. As he stepped into the front bedroom, which had been occupied by defendant, he saw a black box sitting on the night table next to the bed. It was partially opened. He saw a wad of cotton and on top of it a gelatin capsule containing a brown powder which proved to be heroin. The officer returned to the living room and asked defendant about it. Defendant replied: "That isn't mine, that is something Janet left here." Defendant then asked the officer if he had a search warrant and the officer replied in the negative. He then advised those present they were all under arrest on suspicion of possession of narcotics. A general search was made of the house and there was found a spoon and an eyedropper with traces of heroin on them, two hypodermic needles, and a box containing gelatin capsules. Defendant stated he and his sister were renting the house and the front bedroom in which the box was found was his. Dolores, aged 17, in the presence of defendant, stated she would take the rap because she had not been in trouble before and defendant agreed. She then said the outfit belonged to her. She testified at the trial that it belonged to defendant and that she lived at this house; that defendant slept alone in the front bedroom and she slept on a couch in the living room; that she did the housework and washed clothes; that she started using heroin in the arm while living at another address with Janet Jones and defendant; that on the evening of April 6th or 7th, one of the days charged in the information, defendant furnished her with a capsule of heroin, placed the contents in the spoon with water, lit a match and heated it, picked it up with an eyedropper and needle and injected it into her arm, and that thereafter he injected a similar portion in his arm; and that he made no charge for this administration. She identified the spoon and other paraphernalia in evidence as that used by defendant, and testified that a similar administration of this drug to her by defendant occurred on the evening of April 5th and again on April 6th, as charged, and that Janet Jones lived there about two weeks prior to this occasion.

Defendant produced several witnesses in an endeavor to impeach the testimony of Dolores. She had just been committed to the Youth Authority as a user of heroin growing

out of these charges. These several witnesses were friends of defendant and some were users of heroin or had prior convictions. Defendant denied possession of the heroin and denied any sale or injections or administration of heroin to Dolores.

The evidence, if admissible against defendant, was sufficient to support all the charges, and the testimony of the complaining witness Dolores Villarreal, although contradicted in some respects, was not inherently improbable. (*People* v. *De Paula,* 43 Cal.2d 643, 649 [276 P.2d 600].) The principal question is whether it was illegally obtained under the authorities relied upon by defendant, such as *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905]; *People* v. *Wilson,* 145 Cal.App. 2d 1 [301 P.2d 974]; *People* v. *Kitchens,* 46 Cal.2d 260 [294 P.2d 17]; *People* v. *Thymiakas,* 140 Cal.App.2d 940 [296 P.2d 4]; *People* v. *Schraier,* 141 Cal.App.2d 600 [297 P.2d 81]; *People* v. *Gale,* 46 Cal.2d 253 [294 P.2d 13]; and *People* v. *Molarius,* 146 Cal.App.2d 129 [303 P.2d 350].

■ There can be no question that there was reasonable cause for the arrest of Dolores Villarreal and Lydia Ruiz for violation of section 503 of the Vehicle Code. The officers had previous reliable information that the car they were driving was stolen, and they were found driving it. It appears that defendant was also previously seen driving it at a time when it had been reported as being stolen; that several officers, walking the beat in Chinatown, had suspicioned defendant of using it for the purpose of effecting the sale of narcotics, and these facts were known to the officers making the entry into the house at the time of the arrest. They had knowledge that a felony had been committed and it was reasonable to believe that the two women, seen driving the stolen car, were guilty of the felony. (Veh. Code, § 503; *People* v. *Ragone,* 84 Cal.App.2d 476 [191 P.2d 126]; *People* v. *West,* 144 Cal.App.2d 214 [300 P.2d 729]; Pen. Code, § 836, subd. 5.) ■ They were informed of their arrest and the screendoor was opened for the purpose of making this arrest. There was a sufficient compliance with section 844 of the Penal Code. (*People* v. *Borbon,* 146 Cal.App.2d 315 [303 P.2d 560]; *People* v. *Maddox,* 46 Cal.2d 301, 305 [294 P.2d 6].) In the latter case it was held that the primary purpose of the constitutional guarantees relating to searches and seizures is to prevent unreasonable invasions of the security of the people in their persons, houses, papers and effects, and when an officer has reasonable cause to enter a dwelling to make

an arrest and as an incident to that arrest is authorized to make a reasonable search, his entry and his search are not unreasonable. ■ Accordingly, since Dolores and Lydia were tenants of the house in which they were residing, it would also appear proper for the officers to have examined the premises first, to ascertain whether Janet Jones was present, and second, to see whether any evidence was present relating to the charge for which the women were arrested and to determine defendant's connection with the charge. (*People* v. *West*, 144 Cal.App.2d 214 [300 P.2d 729].)

It was recently held that under such circumstances as here related, the officers could only make that kind of a search reasonably necessary in connection with their right of entry, but in the course of conducting a reasonable search they did not have to blind themselves to what was in plain sight simply because it was disconnected with the purpose for which they entered. (*People* v. *Roberts*, 47 Cal.2d 374 [303 P.2d 721].) In that case the officers, while rightfully in the room on another mission, saw a stolen radio which was in plain sight and they took the number of it. Several cases are cited as authority for this holding. In one of these cases the officers entered the defendant's house lawfully for the purpose of searching for another man, and in the course of the search they discovered a distillery in operation. In another, the officers entered lawfully for the purpose of finding and arresting the defendant on one charge and in searching for the defendant they discovered an illegal supply of liquor in the basement, another and different offense. In another case there cited, it was said that where the entry and search are rightful and there is present no element of trespass or fraudulent invasion of the rights of the citizens, there is no reason for excluding evidence of crime discovered in the course of the search; that if the officers discovered in the cellar a counterfeiting plant in operation would it have been their duty to ignore it? If they had come upon the body of a murdered man would their testimony as to finding the body be excluded?

In formulating the rule governing lawful searches and seizures, it quoted from authorities of the United States Supreme Court recognizing the distinction between the seizure of evidence which was readily visible and accessible to the officers and that which was uncovered only after a general, unreasonable ransacking of the premises, and stated that the decisions also make a sharp distinction between the seizure of property which is stolen or contraband and property which is unoffend-

ing of itself and merely evidentiary. ▮ As applied to the heroin in the front bedroom, it was apparently in the plain sight of the officer while rightfully searching that room for the purpose indicated. The possessor of that drug was committing a felony in the officers' presence. They were all placed under arrest on the charge. The further search of the premises for the paraphernalia connected therewith was justified as being incidental to a lawful arrest. (*People* v. *Allen*, 142 Cal.App.2d 267 [298 P.2d 714] ; *United States* v. *Rabinowitz*, 339 U.S. 56 [70 S.Ct. 430, 94 L.Ed. 653] ; *Trupiano* v. *United States*, 334 U.S. 699 [68 S.Ct. 1229, 92 L.Ed. 1663].)

▮ Where the entry and search are rightful and there is present no element of trespass or fraudulent invasion of the rights of citizens, there is no reason for excluding evidence of crime discovered in the course of the search. (*Paper* v. *United States*, 53 F.2d 184, cited with approval in *People* v. *Roberts, supra.*) The authorities relied upon by defendant are factually dissimilar. The question as to whether the testimony of the complaining witness was inherently improbable was considered by the trial court on a motion for new trial and the motion was denied. ▮ The reviewing court may not reappraise the credibility of witnesses and reweigh the evidence. (*People* v. *Jones*, 36 Cal.2d 373 [224 P.2d 353].) No prejudicial error appears from the ruling.

Judgment and order affirmed.

Barnard, P. J., and Mussell, J., concurred.