FOTJRT, J.
 

 This is an appeal from a judgment of conviction (three counts) of selling narcotics.
 

 In an indictment returned in Los Angeles on February 17, 1959, the appellant was charged in Count I thereof with unlawfully selling amidone on or about December 2, 1958, and in Count II thereof with unlawfully selling amidone on or about December 4, 1958. In another indictment returned on February 18,1959, the appellant with Russell J. Fonseca and Mary Fonseca was charged with selling heroin on or about December 11, 1958. The appellant appeared in propria persona and pleaded “Not Guilty.” At the request of the appellant the causes were consolidated for trial. The jury found the appellant guilty as charged in each count. A motion for a new trial was made. The public defender was appointed to assist the defendant in the preparation of the motion for new trial. A probation officer’s report was ordered. The motion for a new trial was denied. Probation was denied and appellant was sentenced to imprisonment in the state prison for the term prescribed by law on each count, the sentences to run consecutively.
 

 A résumé of the facts is as follows:
 
 *103
 
 substance, which later was determined to be amidone. The officer gave the appellant a $10 bill.
 

 
 *102
 
 At about 11:50 a.m. on December 2, 1958, Policeman Villalba, assigned to the narcotics squad, as an undercover agent, approached the appellant at the southwest corner of Temple Street and Beaudry Avenue and said, “Sell me a half, Leo, so I can split.” Appellant replied, “I still don’t know you, do I?” Villalba answered, “I don’t see why not. Everybody else does.” Appellant then went to the rear of a hot dog stand nearby and returned and handed the officer a portion of a yellow balloon containing five capsules filled with a powdery
 

 
 *103
 
 On December 4, 1958, at about 12:35 p.m. Villalba again approached appellant at the hot dog stand at the same intersection heretofore mentioned and inquired if he had “any stuff. ’' Appellant replied that he did have and Villalba stated that he wanted a one-half gram and he gave appellant a $10 bill. Appellant then pointed to a rock or piece of asphalt over which he was standing close by the west wall of the hot dog stand and said, “It’s under that rock. Pick it up.” The officer turned the rock over, saw a blue balloon, picked it up and returned it to the Police Building. The balloon contained five capsules filled with a powdery substance which was determined to be amidone.
 

 At about 12 noon on December 11, 1958, Villalba, still operating as an undercover narcotic agent, approached Bussell Fonseca at the same intersection heretofore mentioned and asked if anybody was around and Fonseca stated, “Are you trying to make it?” The officer stated that he was. About that time appellant and a female who later was identified as Mary Fonseca drove up in a 1955 green Dodge station wagon. Fonseca handed appellant the $10 bill which Villalba had given Fonseca and appellant and the female drove away. At about 12:15 p.m. that same day appellant and the female returned and told Fonseca and the appellant to get into the car. Appellant then drove south on Beaudry Avenue. Appellant said to the female, “This guy puts me to sleep. One of these days I am going to fix with him. Give him 5 caps.” She then handed Villalba 5 capsules containing a white powdered substance which was later examined and found to be heroin. The female handed the officer a piece of paper and suggested that he put the capsules in the paper. The appellant drove the ear to Second Street where he stopped and told Villalba he could catch a bus from there. Villalba got out of the car.
 

 Appellant introduced into the record evidence to the effect that he knew Villalba to be a policeman and that he did not sell him any narcotics. He further stated that he did have some “stuff” in November but not in December; that in December he took a blood test and “wasn’t fooling with no stuff in December.” He also said that in February he was “just chipping now and then” and that he had “scored” “right there on the corner” but he refused to name his supplier.
 

 
 *104
 
 The appellant called Officers Schubach and Walker as witnesses and their testimony indicated that such officers had received information from Sergeant Logue and Captain Madden of the narcotics division that appellant was wanted for the sale of narcotics. A warrant for appellant’s arrest had been issued and the officers were so informed. However, they did not have the arrest warrant within their immediate possession. The officers went to 1147 West 54th Street where an apartment house is located and there recognized the appellant’s automobile which was parked in front of the address just named. The officers parked the police ear about one-half block away and walked to the apartment house. They did not know which apartment the appellant occupied, but upon looking through the front window they saw appellant sitting in the front room. Sergeant Walker went to the rear door which was unlocked and entered while Schubach and Fredericks on went to the front door, opened it, walked in and placed appellant under arrest. Appellant asked Officer Schubach if he had a search warrant and Schubach answered that he did not have one and that he did not need one. Officer Walker stated that he did have a search warrant to enter the house but they did not have it with them in their immediate possession. Schubach asked appellant if he had any narcotics in the house and appellant answered “No.” Schubach said, “Well, I am going to search anyway.” In the course of the search the officer found a black leather jacket containing 15 capsules of heroin. The time of the entrance into the appellant’s apartment was about 2:30 a.m., Saturday, February 21, 1959.
 

 Appellant stated at first that the heroin was not his. The appellant thereafter inquired about the penalty for possessing narcotics and was told ‘ ‘ Two to twenty. ’ ’ Schubach indicated that everybody in the house would have to go to the station until it was determined who owned the narcotics in the jacket and appellant thereupon stated, “Well, it’s my stash. It’s my narcotics. So, I will take it.” Appellant was asked if he was still dealing in narcotics and he answered, “No, I am not dealing any more because of the fact that after Barber arrested me I quit.”
 

 Appellant contends that (1) he was denied “due process at time of arrest”; (2) he was denied “due process at time of trial”; (3) “the Court committed prejudicial misconduct”; (4) “the prosecutor was guilty of misconduct”; (5) “the Court was in error in consolidating eases”; (6) “the Court
 
 *105
 
 lost jurisdiction in continuance”; and (7) “the Court was in error in pronouncing judgment.”
 

 Appellant asserts under his first contention that the arresting officer failed to produce the warrants at the time of the arrest and that under section 842 Penal Code the arrest is illegal. Section 842 of the Penal Code reads as follows:
 

 “An arrest by a peace officer acting under a warrant is lawful even though the officer does not have the warrant in his possession at the time of the arrest, but if the person arrested so requests it, the warrant shall be shown to him as soon as practicable.”
 

 The wording clearly provides for the very course of conduct which was followed in this case.
 

 Appellant further insists that the officers must have had to walk around the house and look into the windows, otherwise they could not have seen him. It is settled in this state that simply looking through a window does not constitute an unreasonable search.
 
 (People
 
 v.
 
 Martin,
 
 45 Cal.2d 755, 762 [290 P.2d 855].)
 

 Appellant also complains that the officers entered the apartment without asking his permission to enter or “without stating their purpose for admittance” and that such conduct was in violation of the provisions of section 844 Penal Code which reads as follows:
 

 “To make an arrest, a private person, if the offense be a felony, and in all cases a peace-officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired.”
 

 The officers in this ease clearly had a right to enter the apartment for the purpose of arresting the appellant and there would seem to be no compelling need under the circumstances to adhere meticulously to the provisions of the code section in question. In any event, the officers did not break open a door or a window of the house in which the appellant was then located. Further, in this ease none of the narcotics uncovered as a result of the entry and search were offered in evidence and hence it is difficult to see how the matter of entry could affect the real question involved in this particular case; namely, did the appellant sell narcotics on the days mentioned in the indictment.
 

 Appellant was arrested on February 21, 1959, and was not brought before a magistrate until February 26, 1959.
 
 *106
 
 The contention to the effect that the delay was fatal was first raised on appeal. This cannot be done.
 
 (People
 
 v.
 
 Watts,
 
 126 Cal.App.2d 659, 662 [272 P.2d 814];
 
 People
 
 v.
 
 Blankenship,
 
 171 Cal.App.2d 66, 80-81 [340 P.2d 282].)
 

 Furthermore, appellant does not make any claim that there was any adverse effect resulting from the delay. Under section 825 of the Penal Code the delay must materially affect the outcome of the trial.
 
 (People
 
 v.
 
 McCrasky,
 
 149 Cal.App.2d 630, 637 [309 P.2d 115].)
 

 Considering next appellant’s second contention; namely, that he was “denied due process at time of trial.” Appellant represented himself at the trial but did so as a matter of his own choice. The judge offered to provide counsel, “very good counsel” and appellant replied in effect that he realized such but saw fit to go ahead by himself. It is clear that in California a defendant can waive counsel if he so sees fit in a ease of the character of the one before us.
 
 (In re Connor,
 
 16 Cal.2d 701, 709 [108 P.2d 10].) Also, on appeal the burden is on the appellant to establish that he did not in fact competently and intelligently waive his right to counsel. The record in this case shows no indication of any error in this respect. The trial judge had the appellant before him and had the opportunity to observe him and to determine whether he had the intelligence and ability to make the proper waiver. The appellant exhaustively examined each of the witnesses called by the prosecution; he testified at length in his own behalf and he called and examined witnesses in his own behalf.
 

 As to the contention of the appellant that the court committed prejudicial misconduct, we find no merit thereto. At the conclusion of the prosecution’s case in chief the appellant announced that he wanted “to call the arresting officer.” The judge asked the appellant to approach the bench, and outside of the hearing of the jury the following occurred:
 

 “The Court: The Supreme Court says I do not have to teach you the law. But I think it is part of my job and I want to be sure that you understand that when you call these policemen as your witnesses, you are bound by what they say.
 

 “Mr. Feeley: Yes, sir. I want to call both the witnesses and I would like to have one leave the courtroom that is not testifying.
 

 “The Court: I want you to know that you are bound by what they say.
 

 “Mr. Feeley: I see.”
 

 
 *107
 
 We believe that in general the trial judge correctly stated the law to the appellant.
 

 The appellant called Mary Fonseca as his witness. The judge stated to her as follows:
 

 “The Court : I’d better advise this witness that if any question is asked of you that might in any way incriminate you in any crime, you need not answer it unless you want to. If you are in doubt about whether it will incriminate you, you ask to speak to me and we will put the jury out of the room and we will talk it over. Do you hear ? Do you understand that now ?
 

 “The Witness : Yes.
 

 “The Court: All right, if there is any question in your mind, you ask me and then we will discuss it before you answer it.”
 

 The appellant then asked, “Mary, did you give anyone narcotics on the 11th day of December?” The judge then said:
 

 “The Court: Now you need not answer that unless you want to. You realize that it will incriminate you if you do.”
 

 The witness then stated that she did not want to answer the question. It must be remembered that the witness was a co-defendant of the appellant and we can see no error in the course followed by the trial judge. In fact, the judge is to be commended for his fairness in the matter.
 
 {People
 
 v.
 
 Redsion,
 
 139 Cal.App.2d 485, 495 [293 P.2d 880].)
 

 Under the heading of misconduct of the prosecuting attorney, appellant asserts that the prosecutor withheld evidence consisting of a portion of a tape recording. The fact of the matter is that the tape recording was played to the jury from notch Number 70 thereon to notch Number 119 and the judge said, “Do you want any more of the tape played Mr. Feeley?” and appellant answered, “No, Sir, that’s all, you can excuse the officer.” There was no error in so proceeding but even if there were the appellant cannot now complain of error which he himself invited.
 
 {People
 
 v.
 
 Peitinger,
 
 94 Cal.App. 297, 301 [271 P. 132].)
 

 As to the matter of consolidating the eases for trial it was apparently done in due and proper form. The clerk’s transcript for the court day March 30, 1959, in part reads as follows: “Deputy District Attorney L. Snyder and the Defendant in propria persona, present. At request of defendant, cases are consolidated for trial.” There is nothing in the reporter’s transcript to the contrary to that stated above. Statements of appellant which are not supported by
 
 *108
 
 the record cannot be considered upon an appeal from the judgment.
 
 (People
 
 v.
 
 Robinson,
 
 102 Cal.App.2d 800, 807 [228 P.2d 583].)
 

 The assertion by the appellant that the court lost jurisdiction when a continuance was granted, is without merit. On February 26, 1959, the trial was set for March 18, 1959. On March 18, 1959 the People moved to continue the matter to March 30, 1959. The sheriff was then ordered to make available law books and forms required by the appellant. The record is barren of any objection by the appellant and on appeal it will be presumed that the appellant consented to the continuance.
 
 (People
 
 v.
 
 Peter,
 
 20 Cal.App. 151, 152 [128 P. 415];
 
 People
 
 v.
 
 Dale,
 
 79 Cal.App.2d 370, 378 [179 P.2d 870].)
 

 Appellant lastly contends that the court was in error in pronouncing judgment. He insists that the judge did not act upon his application for probation. The record shows the following. Immediately after the judge had discharged the jury he said:
 

 “The Court: Mr. Feeley, I take it that you waive time and ask leave to file an application for probation?
 

 “Mr. Feeley : No, your Honor. I would like to make a motion for a new trial.
 

 “The Court : We will set that for the same time and enter your motion for a new trial under all of the statutory grounds. We will ask for a probation report and set the matter for hearing at 10:00 o ’clock on April the 27th in this courtroom.
 

 “Mr. Feeley: May I have a transcript so that I can go over my motion for a new trial?
 

 “The Court: We will order you a transcript. (To the reporter) Miss Reporter, please prepare an original and 3 copies of this transcript in time for the motion on April 27th.
 

 “Mr. Feeley: May I also have permission to go to the law library ?
 

 “The Court: Go to the law library? I don’t think it’s necessary at this time. If it proves necessary, you can ask and I will give you permission. I think that I’d better assign to you a public defender to help you on your motion for a new trial. Will you accept the attorney ?
 

 “Mr. Feeley: Yes.
 

 ‘ ‘ The Court : You will do what he says ?
 

 “Mr. Feeley: Yes, sir.
 

 “The Court: All right. We will refer the matter to the public defender’s office and then they will assign an attorney to help you.
 

 
 *109
 
 “Mr. Snyder : Will the defendant waive time in this matter ?
 

 “The Court: Do you waive time then?
 

 “Mb. Peeley: Yes, sir.
 

 ‘‘The Court: Time is waived. The defendant is remanded to custody.”
 

 The ease was continued to April 27, 1959. On the latter date, at the request of appellant’s counsel, the case was continued to May 18, 1959. On that date the appellant was in court with his attorney “in connection with his motion for a new trial and the hearing on application for probation and sentence.” The clerk’s transcript shows that probation was denied. We have, pursuant to the Rules on Appeal (12a) ordered the original file in this ease to this court and the original probation officer’s report shows that the judge signed a statement thereon to the effect that he had read and considered the foregoing report.
 

 The attorney from the public defender’s office stated to the judge:
 

 “Mr. Mead: Yes, your Honor. May I make the statement that I have received the transcript of the trial in this matter. It is some 211, almost 250 pages. I went over it very carefully, your Honor. I found no substantial grounds, your Honor, that would warrant the granting of a motion for a new trial, in my opinion.
 

 “I have advised Mr. Peeley this was my feeling after reviewing the transcript. Mr. Peeley states, however, that he would like to argue on a motion for a new trial to your Honor.”
 

 We have read the entire record in this ease and it is clear that the appellant was legally and properly convicted and sentenced. There is no merit to any of the appellant’s contentions.
 

 The judgment is affirmed.
 

 Wood, P. J., and Lillie, J., concurred.
 

 A petition for a rehearing was denied April 5, 1960, and appellant’s petition for a hearing by the Supreme Court was denied May 18, 1960. Dooling, J. pro tem.,
 
 *
 
 participated therein in place of Spence, J.
 

 *
 

 Assigned by Chairman of Judicial Council.