[Crim. No. 8235. Second Dist., Div. Two. Dec. 23, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. FRANKLIN
LOUIS CHACON, Defendant and Appellant.

Bernard Lauer, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Lawrence R. Tapper, Deputy Attorney General, for Plaintiff and Respondent.

FOX, P. J.—In Count 1 of an amended information filed by the District Attorney of Los Angeles County, defendant was charged with a violation of Penal Code section 487, subdivision 3 (grand theft, auto). Count 2 of the information charged a violation of Vehicle Code section 10851. Two prior felonies were also alleged. Defendant pleaded not guilty and waived trial by jury. Pursuant to stipulation the matter was submitted to the court for trial upon the transcript of the preliminary hearing. The objections made to the introduction of evidence at the preliminary hearing were deemed to be in effect at the trial, and both sides reserved the right to introduce additional evidence. After the trial defendant was adjudged guilty of the charge in Count 1. Count 2 was then dismissed and the priors were stricken in the interests of justice. Defendant appeals from the judgment of conviction.

The undisputed facts are as follows: at approximately 4 p.m. on September 22, 1961, Mrs. Dorothy Kanowsky parked her car in the parking lot of Bullock's department store in Pasadena, leaving the keys in the ignition. When she returned at about 5 p.m. the car was gone.

Also on September 22, 1961, one Shirley Licon was arrested for shoplifting in Bullock's store in Pasadena. She informed the police that she and the defendant had come to Pasadena together by bus, but had separated after arriving shortly before 4 p.m. She stated that she did not know whether defendant had stolen the car. She also told the police that she and defendant lived at 2240½ East Whittier Boulevard with defendant's mother. The police subsequently had a telephone conversation with defendant in which he stated that he knew Shirley Licon, but that he hadn't been to Pasadena that day. He also told the police he would be home all evening.

Upon arriving at the defendant's residence around midnight the officers observed Mrs. Kanowsky's stolen car

parked in the street approximately 100 feet from the apartment. They knocked on the door and when Mrs. Chacon, defendant's mother, answered, they identified themselves and asked if they could come in and search the apartment. Mrs. Chacon asked if the officers had a warrant and was advised that they did not, but they told her that Shirley Licon, who was in custody, had given them permission to search through her belongings. They entered and were led to Shirley Licon's possessions which they searched, finding nothing.

The officers noticed a davenport in the living room which was made up for sleeping. At the foot of the davenport were a pair of men's shoes, a shirt, and a man's jacket. They proceeded to search further over Mrs. Chacon's objections, and when they asked her where the staircase in the kitchen led she said "nowhere," insisting that the officers leave. One of the officers climbed the stairs to investigate and found defendant hiding there in the dark. Defendant denied knowledge of the Kanowsky car theft, but was placed under arrest "for investigation of grand theft, auto." He was taken downstairs and placed in the police car where he asked for a cigarette. One of the officers, in attempting to comply with his request, put his hand in defendant's jacket pocket and discovered a set of ignition keys which, though claimed by defendant to be keys to his Chevrolet, proved to be those left in the car by Mrs. Kanowsky.

Defendant now contends, as he did both at the preliminary hearing and at the trial, that he was unlawfully arrested and that the keys which were found on his person were an incident of that unlawful arrest and were therefore improperly admitted in evidence against him. The basis for this contention is that the police officers did not have probable cause to make the arrest of defendant, and hence had no right to enter the apartment, discover him, and search him.

So far as pertinent herein, Penal Code section 836 states that "A peace officer may make an arrest . . . without a warrant . . . [§ 837] 3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it." Regarding reasonable cause for making an arrest our Supreme Court has said: "There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances [citations]—and on the total atmosphere of the case. [Citations.] Reasonable cause has been generally defined to be such a state of facts as would lead a man of

ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. [Citations.] ... ▮ The test is not whether the evidence upon which the officer acts in making the arrest is sufficient to convict but only whether the person should stand trial. [Citation.]'' (*People* v. *Ingle,* 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14, 348 P.2d 577], cert. den. 364 U.S. 841 [81 S.Ct. 79, 5 L.Ed.2d 65].) In the instant case a number of facts were known to the officers which, when pieced together, would ''lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion'' that defendant had stolen the Kanowsky car.

▮ First of all, defendant was placed by Shirley Licon at the scene of the theft of the car at about the time it was stolen. She lived at the same address as defendant and had come to Bullock's by bus with defendant and had been picked up by the officers that afternoon as a suspected shoplifter. The officers' interrogation of Shirley brought up defendant's name. Her statements created a suspicion that he might be involved in the theft of the auto. While Shirley cannot be considered a tested and reliable informant, ''... where information supplied by an untested source is independently corroborated by the police, an arrest based thereon is fully warranted.'' (*People* v. *Acosta,* 213 Cal.App.2d 706, 710 [29 Cal.Rptr. 241]. In a telephone conversation defendant admitted to the police that he knew Shirley, giving at least some credence to her story. Defendant's denial of being in Pasadena that day, during that telephone conversation, did not serve to completely remove the officers' suspicion and duty to investigate further. The subsequent independent observation by the officers of the stolen car near defendant's apartment strengthened their suspicions and, when added to the information obtained from Shirley, and from defendant during his telephone conversation with the police, established sufficient probable cause to justify the arrest of defendant. ''The unusual circumstances need only be slight in themselves, if when taken together, under the circumstances present at the time of arrest they are sufficient to arouse the suspicion of a trained police officer.'' (*People* v. *Luckman,* 198 Cal.App.2d 347, 352 [18 Cal.Rptr. 167].)

Defendant also argues that his mother, who answered the door in response to the officers' knock, did not consent to their entry and therefore the arrest and search following such entry was unlawful. In *People* v. *Baranko,* 201 Cal. App.2d 189, 194 [20 Cal.Rptr. 139], an analogous argument

was disposed of in the following language: "Appellant argues that the arrest of codefendant Fisher, after she opened the door of the room in response to the officer's knock, was unlawful; thus, the officers could neither arrest defendant, search the premises nor seize the bookmaking paraphernalia. Assuming from the record before us that there was no probable cause for Fisher's arrest, we fail to see how that fact, under the instant circumstances, could in any way affect the validity of defendant's arrest or, as an incident thereto, the seizure of the betting markers and other bookmaking paraphernalia. When McFee [the officer] knocked on the door he had reasonable cause to believe that defendant was on the premises and had engaged in, and was then conducting, bookmaking activities, a felony; thus he had a right to enter. Had defendant, and not Fisher, opened the door and been arrested, his arrest and the seizure of the evidence could not be open to question; had entry been denied the officers by defendant, they could well have used reasonable force to enter. (Pen. Code, § 844.) However, when Fisher opened the door, the officers thereby gained lawful entry to the room; the fact that they arrested her before arresting the defendant is of no significance in determining whether his arrest and the subsequent seizure were valid. While the opening of the door by Fisher facilitated the officers' entry to the room, Fisher's arrest, lawful or otherwise, neither aided nor had any relationship to or bearing on the officers' arrest of defendant or their seizure of the bookmaking paraphernalia. Entirely independent of Fisher, the officers had probable cause to arrest defendant; they gained lawful entry to the room by way of the door opened by Fisher; seeing defendant therein, they properly arrested him. . . ."

The instant case involves, as did *Baranko,* a situation in which the officers had probable cause to arrest defendant but assertedly entered uninvited to effect that arrest when a third person responded to their knock by opening the door. Under such circumstances we cannot say that the alleged manner of entry invalidated the arrest of defendant.

Having determined that there was reasonable cause to arrest the defendant, and that the manner employed to effectuate that arrest was lawful, it follows that the search made as an incident of that arrest was lawful and that the evidence thereby obtained was properly admitted.

The judgment is affirmed.

Herndon, J., concurred.