[Crim. No. 11533. In Bank. Feb. 28, 1968]

THE PEOPLE, Plaintiff and Respondent, v. GENOVEVO ROSALES, Defendant and Appellant.

Genovevo Rosales, in pro. per., and Joseph C. Battaglia, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Brian Amer, Deputy Attorney General, for Plaintiff and Respondent.

TRAYNOR, C. J.—Defendant appeals from a judgment of conviction of possession of heroin. (Health & Saf. Code, § 11500.) The prosecution was based on the discovery of heroin on defendant's person at the time of his arrest. Defendant contends that the heroin was obtained by an unconstitutional search and seizure by the arresting officers.

Defendant and Fred Berru were arrested in a house in the Pacoima area of Los Angeles County. They were apprehended by Parole Officer Damerell, San Fernando Police Officer Barbarick, and two other police officers. Officer Barbarick had received information that defendant and Berru were arranging sales of heroin by telephone at the house where they were arrested. He got in touch with Parole Officer Damerell and learned that both suspects were parolees who had violated their paroles by failure to report and that the Adult Authority had suspended defendant's parole and issued an all points bulletin for his arrest. The officers then went to the house to arrest defendant for parole violation. Officers Barbarick and Damerell went to the front door, and the other officers covered the back of the house. Before entering, one officer saw Berru through a front bedroom window and another officer saw defendant through the front screen door. Defendant was sitting on a couch with his back to the door. Officers Barbarick and Damerell quickly entered the house and accosted defendant. Just before they arrested defendant they passed a girl and told her that they were police officers but they did not announce their purpose or demand entry before going into the house.

There is some evidence that the girl was related to Berru, but there is no evidence of her age, or whether she lived at the house, was visiting or just arriving for a visit. It does not appear whether the officers were in uniform. Damerell was not the parole officer of either Berru or Rosales, and there is no evidence that either knew who he or the other officers were.

Damerell testified that before he entered the house he believed that the screen door was closed but that the wooden door was open.[1]

 Although the prosecution did not elicit sufficient details of Officer Barbarick's information on defendant's current narcotics activities to show he had reasonable cause to believe that defendant was guilty of a new narcotics offense, defendant's arrest was justified by the suspension of his parole and the order of the Adult Authority that he be returned to custody. (Pen. Code, §§ 3060, 3061.) It also appears that before they entered the house, the officers had reasonable cause to believe that defendant was there. The crucial question, therefore, is whether the officers' failure to explain their purpose and demand admittance as required by section 844 of the Penal Code[2] vitiated the arrest. We hold that it did.

 We note at the outset that the officers' identification of themselves to the girl did not constitute substantial compliance with section 844. That section requires that an officer explain his purpose before demanding admittance, not merely that he identify himself as an officer. "The burden of making an express announcement [of purpose] is certainly slight." (*Miller* v. *United States* (1958) 357 U.S. 301, 309 [2 L.Ed.2d 1332, 1338, 78 S.Ct. 1190].)

Such identification alone could constitute substantial compliance with section 844 only if the surrounding circumstances made the officers' purpose clear to the occupants or showed that a demand for admittance would be futile. There is nothing in the record to show that any of the occupants or even the girl knew that the officers' purpose was to arrest the defendant or understood that they were demanding admittance.[3]

---

[1]Defendant testified that there was no screen door and that the wooden door was closed.

We note that Police Officer Olsen testified at the preliminary hearing that the girl was stopped as she entered the house and that she opened the door for the officers after they had identified themselves. This evidence was not before the trial court when it determined the validity of the entry, since the defendant elected not to proceed on the preliminary hearing record.

[2]"To make an arrest . . . in all cases a peace-officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

[3]In *People* v. *Limon* (1967) 255 Cal.App.2d 519 [63 Cal.Rptr. 91], cited by the Attorney General, the entry was held valid on the theory that

The Attorney General contends that since the officers did no more than open an unlocked screen door and walk in, no "breaking" within the meaning of the statute occurred. We do not agree with this contention. Although the common law rule was first articulated to regulate entry by force, it is not limited to entries effected by physical violence. Section 844 is a codification of the common law. (*People* v. *Maddox* (1956) 46 Cal.2d 301, 306 [394 P.2d 6].) At the very least, it covers unannounced entries that would be considered breaking as that term is used in defining common law burglary. (Rest.2d Torts (1965) § 206, com. b; Blakey, *The Rule of Announcement and Unlawful Entry: Miller* v. *United States and Ker* v. *California* (1964) 112 U.Pa.L.Rev. 499, 505; Wilgus, *Arrest Without a Warrant* (1924) 22 Mich.L.Rev. 798, 806.) As so defined, no more is needed "than the opening of a door or window, even if not locked, or not even latched. Pulling open a screen door held closed only by a spring is sufficient." (R. Perkins, Criminal Law (1957) 149, 150.)[4]

Since in the present case the only evidence before the trial court showed that the officers entered by opening a closed, unlocked door, the prosecution did not discharge its burden of establishing the legality of the entry. (See *People* v. *Roberts* (1956) 47 Cal.2d 374, 377 [303 P.2d 721]; *People* v. *Carswell* (1959) 51 Cal.2d 602, 607 [335 P.2d 99].)

The fact that defendant was a parole violator deemed

the defendant had seen the officers and knew their identity and that the announcement would have been a futile gesture. No such inference can be drawn in this case.

[4]The Attorney General has cited several California cases in support of his contention that an entry by opening a closed, unlocked door is not a breaking. *People* v. *Baranko* (1962) 201 Cal.App.2d 189, 194 [20 Cal. Rptr. 139], and *People* v. *Chacon* (1963) 223 Cal.App.2d 739, 743 [35 Cal.Rptr. 799], involved entry after the defendant or a third person had voluntarily opened the door. In *People* v. *Littlejohn* (1957) 148 Cal. App.2d 786, 790 [307 P.2d 425], the officers showed their badges and placed the two defendants under arrest while facing them through a screen door, and then opened the screen door. The announcement and identification were made before entry and the statute was complied with. To the extent that *People* v. *Feeley* (1960) 179 Cal.App.2d 100, 105 [3 Cal.Rptr. 529], is contrary to our holding herein, it is disapproved. The federal courts are in disagreement as to the interpretation to be given the similar federal statute. (18 U.S.C. § 3109.) At one extreme are cases indicating that any entry without permission is a breaking. (E.g., *Hair* v. *United States* (D.C. Cir. 1961) 289 F.2d 894, 897 [110 App.D.C. 153].) At the opposite extreme is *Sabbath* v. *United States* (9th Cir. 1967) 380 F.2d 108, 111, certiorari granted, 389 U.S. 1003 [19 L.Ed.2d 598, 88 S.Ct. 570], which sanctioned entry by opening a closed, unlocked door. The Court of Appeals for the Ninth Circuit has given the same interpretation to section 844. (*Williams* v. *United States* (9th Cir. 1959) 273 F.2d 781, 793-794.) In the present case it is unnecessary to decide whether any entry without permission is a breaking.

an "escape and fugitive from justice" (Pen. Code, § 3064) did not excuse noncompliance with section 844, for the Legislature has expressly provided that an order to retake a parolee must be executed "in like manner as ordinary criminal process" (Pen. Code, § 3061). Even an escape from custody, however, does not alone justify entrance into a house to make an arrest without explanation of purpose and demand for admittance. (Pen. Code, § 855; see also Pen. Code, § 1531; *People* v. *Arellano* (1966) 239 Cal.App.2d 389, 390-392 [48 Cal.Rptr. 686]; *People* v. *Stephens* (1967) 249 Cal.App.2d 113, 114-117 [57 Cal.Rptr. 66].)

■■ Section 844 is designed to protect fundamental rights. "Decisions in both the federal and state courts have recognized, as did the English courts, that the requirement is of the essence of the substantive protections which safeguard individual liberty." (*Ker* v. *California* (1962) 374 U.S. 23, 49 [10 L.Ed.2d 726, 747, 83 S.Ct. 1623], Brennan, J. dissenting.)

The statute reflects more than concern for the rights of those accused of crime. It serves to preclude violent resistance to unexplained entries and to protect the security of innocent persons who may also be present on premises where an arrest is made.[5] "We are duly mindful of the reliance that society must place for achieving law and order upon the enforcing agencies of the criminal law. But insistence on observance by law officers of traditional fair procedural requirements is, from the long point of view, best calculated to contribute to that end. However much in a particular case insistence upon such rules may appear as a technicality that inures to the benefit of a guilty person, the history of the criminal law proves that tolerance of short-cut methods in law enforcement impairs its enduring effectiveness. The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application. . . . Every householder, the good and the bad, the guilty and the innocent, is entitled to the protection designed to secure the common interest against unlawful

[5] "The law of England, which is founded on reason, never authorises such outrageous acts as the breaking open every door and lock in a man's house without any declaration of the authority under which it is done. Such conduct must tend to create fear and dismay, and breaches of the peace by provoking resistance. This doctrine would not only be attended with great mischief to the persons against whom process is issued, but to other persons, also, since it must equally hold good in cases of process upon escape, where the party has taken refuge in the house of a stranger." (Heath, J., in *Ratcliffe* v. *Burton* (1802) 3 Bos. & Pul. 223, 230, 127 Eng. Rep. 123, 126-127.)

invasion of the house. The petitioner could not be lawfully arrested in his home by officers breaking in without first giving him notice of their authority and purpose. Because the petitioner did not receive that notice before the officers broke the door to invade his home, the arrest was unlawful, and the evidence seized should have been suppressed." (*Miller* v. *United States* (1958) 357 U.S. 301, 313-314 [2 L.Ed.2d 1332, 1340-1341, 78 S.Ct. 1190]; cf. *Ker* v. *California, supra,* 374 U.S. 23, 40-41 [10 L.Ed.2d 726, 742-743], where "exigent circumstances" excused compliance with the notice and demand requirements.)

Noncompliance with section 844 may nevertheless be excused when the officer acts on a reasonable and good faith belief that compliance would increase his peril, frustrate an arrest, or permit the destruction of evidence. Such a belief, however, must be based on the facts of the particular case. It cannot be justified by a general assumption that certain classes of persons subject to arrest are more likely than others to resist arrest, attempt to escape, or destroy evidence. (*People* v. *Gastelo* (1967) 67 Cal.2d 586, 588 [63 Cal.Rptr. 10, 432 P.2d 706] and cases cited.)

The Attorney General contends that the officers were excused from compliance with section 844 to prevent defendant's escape. The facts do not support this contention. Four officers went to the house and covered its front and back. Before entering they saw both defendant and Berru and observed no suspicious activity. Compliance with section 844 would have afforded defendant and Berru a few seconds at most to take evasive action. There is no evidence that would justify a belief that such compliance would have increased the officers' peril, frustrated the arrest, or resulted in the destruction of evidence.

Since the entry was unlawful, the search of defendant's person was illegal. The heroin discovered thereby should therefore have been excluded.

The judgment is reversed.

Peters, J., Tobriner, J., and Sullivan, J., concurred.

BURKE, J.—I dissent. The majority, by adopting an unduly restrictive view regarding what constitutes exigent circumstances excusing strict compliance with the demand and explanation requirements of Penal Code section 844,[1]

---

[1]Penal Code section 844 provides: "To make an arrest . . . a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for

conclude that the officers' violation of that section vitiated the arrest and rendered the search illegal. I do not agree and am satisfied that the Court of Appeal and trial court in this case properly determined, expressly or impliedly, that under the circumstances here present literal compliance with the formal requirements of section 844 was unnecessary and the officers' conduct was reasonable.

This court pointed out in *People* v. *Maddox,* 46 Cal.2d 301, 306 [394 P.2d 6], that the primary purpose of the constitutional gurantees regarding searches and seizures is to prevent unreasonable invasions of the security of the people in their persons, houses, papers and effects, and that compliance with the demand and explanation requirements of section 844 is excused if the facts known to the officer before his entry were sufficient to support his good faith belief that compliance would have increased his peril or frustrated the arrest. (See also *Ker* v. *California,* 374 U.S. 23, 37-41 [10 L.Ed.2d 726, 740-743, 83 S.Ct. 1623] ; *People* v. *Gastelo,* 67 Cal.2d 586, 588 [63 Cal.Rptr. 10, 432 P.2d 706] ; *People* v. *Carrillo,* 64 Cal.2d 387, 391 [50 Cal.Rptr. 185, 412 P.2d 377] ; *People* v. *Potter,* 144 Cal.App.2d 350, 356 [300 P.2d 889].) Here the facts known to the officers before their entry amply warranted such a belief.

The police officers and the parole officer went to the house in which they had been informed defendant was living for the purpose of arresting him and his companion Berru for parole violation. According to Parole Officer Damerell, two of the officers went to the back of the house because they were "fearful of flight" by defendant and Berru. Damerell and Officer Barbarick went to the front door. There the wooden door was open, but the screen door was closed. Before entering, the officers observed Berru in a bedroom with his wife or former wife and saw defendant on a couch in the living room several feet from the front door with his back to the officers.

At the doorway the officers identified themselves to a girl. Damerell testified that "We were moving as quickly as possible because we anticipated [a] possible escape attempt." Barbarick and Damerell entered the house and arrested defendant and Berru. A search of defendant's person revealed heroin. According to defendant, it was dark outside at the time of the arrest.

---

believing him to be, after having demanded admittance and explained the purpose for which admittance is desired.''

Information obtained by the officers from the Santa Barbara parole office regarding defendant's prior criminal record and of his and Berru's having absconded from parole, together with additional matters known to them including in part their observations indicating that defendant and Berru were both in the same house in separate rooms, fully justified a belief that defendant and Berru would resist arrest or resume their flight if afforded any opportunity to do so. Surprise was manifestly important in minimizing danger to the officers and preventing escape by the two parole absconders.

In my opinion the Court of Appeal in the present case properly concluded that "The officers, by their prompt and efficient actions, violated no basic constitutional or statutory guarantee by getting inside of the house, where they were entitled to be, more quickly than they would have had they complied" strictly with the formal provisions of section 844. I would affirm the judgment.

McComb, J., and Mosk, J., concurred.

Respondent's petition for a rehearing was denied March 28, 1968. McComb, J., Mosk, J., and Burke, J., were of the opinion that the petition should be granted.