[Crim. No. 14162.   Second Dist., Div. Four.   Nov. 20, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. EUGENE
TAYLOR, Defendant and Appellant.

Grayson, Green & Vodnoy, Joseph T. Vodnoy and Robert L. Schneider for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and David B. Stanton, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was charged with receiving stolen property and with possession of marijuana. Trial by jury was duly waived and the case was submitted on the transcript of the testimony at the preliminary examination, together with additional testimony. Defendant was found guilty on both counts; probation was denied; defendant was sentenced to state prison on both counts, the sentences to run concurrently.[1] He has appealed. We affirm the convictions.

The evidence for the People was as follows:

At about 10:30 a.m., on September 8, 1966, a jewelry store was robbed by a person subsequently identified as Virgil Adamson. At about 3 p.m., that same day, Officer Ferry saw Adamson, whom he knew, enter a stairway leading to an apartment building at 5430 Blackwelder Street, in the city of Los Angeles. Ferry knew that defendant (whom he also knew) lived in that apartment and he knew that defendant and Adamson were friends. Since Ferry was, at that time, unaware of the robbery, he did not regard the episode as significant. At about 5 p.m., Ferry was shown a police teletype reporting the jewelry store robbery and containing a description of the robber. The description fitted Adamson. Ferry met the clerk in charge of the store at the time of the robbery, showed him eleven "mug shots," including one of Adamson, and the clerk identified Adamson as the robber.[2]

Ferry then returned to the vicinity of defendant's apartment. A 1965 Cadillac automobile, blue over blue, was parked in the carport facing the street. Ferry knew that defendant owned such an automobile and also knew that Adamson drove an identical Cadillac. Ferry drove past, picked up another officer and returned to the apartment. At that time, no car was in the carport but a blue over blue Cadillac was parked at

[1]The reporter's transcript recites an order by the trial court that the sentences should run concurrently. The judgment as entered by the clerk is silent on that point. By virtue of section 669 of the Penal Code, the effect of the omission is the same as though the court's order had been included.

[2]Defendant was represented by private counsel at the trial and on appeal. No contention is made that the mug shot identification violated any rights of defendant.

the foot of the stairway. The officers drove around the block again. When they next approached the apartment, the blue over blue Cadillac was still parked at the foot of the stairway and another Cadillac, dark wine with a white top, was parked in the driveway behind the first car.

Ferry pulled his car into the driveway, took a shotgun, ran up the stairway, and forced open the door to defendant's apartment. Defendant was in the apartment with four other persons. Ferry went through the apartment, looking for Adamson. He did not find him; but, in the course of the search, he saw a large amount of jewelry on display—some of which corresponded with the jewelry reported to him as stolen in the robbery. Defendant was arrested, and advised of his constitutional rights.[3] In response to questions, defendant said the jewelry had been left with him to be sold. A further search of the apartment disclosed the marijuana involved in the other count.[4]

On appeal, counsel argues that the entry and search were illegal because: (1) The officers had no reasonable cause for entry; and (2) the entry violated section 844 of the Penal Code. We reject both contentions.

I

The People's theory in support of the existence of reasonable cause is as follows: Since the blue over blue Cadillac was parked, at the time of the entry, in the driveway, where a visitor might park, and not in the carport where a car had been seen in the afternoon, the officers reasonably believed that it was the Cadillac belonging to Adamson, whom Ferry had seen at the apartment earlier. Although the ownership could have been verified by checking the license number through the police radio, the time of day (11:15 p.m.) and the distance of the car from the street, would have required the officers to approach the driveway on foot, with a risk of being seen by anyone in defendant's apartment.[5] The trial court

---

[3]It is not here contended that the warnings were inadequate.

[4]Defendant testified, denying the incriminating statement attributed to him by the officers and giving an exculpatory explanation for the presence of the jewelry. Since it is obvious that the trial court did not believe him, and since it is not contended that the evidence for the People, if admissible, does not support the conviction, we do not set out his testimony.

[5]Defendant points out that, in fact, defendant's apartment was so situated as to make observance of an officer in the driveway unlikely. But the officer testified that he was not aware of the exact location of defendant's apartment in the building. Again, we yield to the conclusion of the trial court based on its view of the scene.

visited the scene and observed the problems of visibility. We cannot say that it was in error in concluding that the officers reasonably believed that Adamson, by then being sought for the robbery, was in the apartment. Had he been there, the right to enter to arrest him for that felony is undisputed. The entry, and the search of the apartment for Adamson was lawful. ■ When, in the course of that search, part of the stolen jewelry was in plain sight, the arrest of defendant was likewise lawful and his questioning, after proper warning, was equally proper. Since only part of the stolen jewelry was in sight, a further search of the apartment for the remainder was lawful and the marijuana discovered in the course of that search was lawfully seized and introduced.

## II

■ Officer Ferry explained his unannounced and forcible entry on the ground that, since it was reported that Adamson had been armed at the time of the robbery, and since Adamson was known to have used guns on other occasions, he had reasonable grounds to believe that an announced entry would be resisted by force, with danger to his life and that of his partner. Again, we cannot say that the trial court was in error in accepting this explanation.

Defendant relies on *People* v. *Gastelo* (1967) 67 Cal.2d 586 [63 Cal.Rptr. 10, 432 P.2d 706]. The reliance is misplaced. *Gastelo* stands only for the proposition that an entry in nonobservance of section 844 is not excused by a general belief that all cases involving a particular crime involve a risk of destruction of evidence. Neither *Gastelo*, nor *People* v. *Rosales* (1968) 68 Cal.2d 299 [66 Cal.Rptr. 1, 437 P.2d 489], overrule *People* v. *Maddox* (1956) 46 Cal.2d 301 [294 P.2d 6], where the officer has a "particular" reason for believing that, in the individual case, one of the traditional excuses for nonobservance of section 844 exists. Such a "particular" reason was present here. (*People* v. *Welch* (1968) 260 Cal.App.2d 221, 227 [67 Cal.Rptr. 69].

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 15, 1969.