[Crim. No. 8996. First Dist., Div. Two. Aug. 18, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
EVERETT HILL, Defendant and Appellant.

COUNSEL

Geoffrey A. Braun, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Robert R. Granucci and D. Stuart Candland, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

TAYLOR, J.—This is an appeal from a judgment of conviction[1] entered on a jury verdict finding defendant guilty of two separate counts of possessing and selling restricted dangerous drugs (Health & Saf. Code, §§ 11911, 11912). Viewing the evidence most strongly in favor of the

---

[1]The notice of appeal indicates that defendant also purports to appeal from the order denying his motion for a new trial. As this order is not appealable, the purported appeal must be dismissed.

judgment, the record discloses the following pertinent facts as they relate to the first count of which defendant was convicted.

On September 26, 1968, Katie Oatis, 18, Ricky Vigno, 17, and Richard Yeager, drove to San Francisco for the purpose of purchasing methedrine ("speed"), a dangerous and restricted drug. Katie gave Vigno $40 and Yeager added $10. The three proceeded to Fourth Avenue and Irving Streets in San Francisco, where Vigno got out of the car, walked to defendant's apartment at 1308-4th Avenue and entered. Defendant ordered Vigno to wait in a back room and returned with a cigar box containing a bag of white powdery substance, for which Vigno paid defendant $40 or $45. Vigno returned to the car and all three returned to San Rafael.

Vigno kept some of the speed and went home, while Katie and Yeager proceeded to an apartment at 75 Woodland, where both injected the rest that Vigno had obtained from defendant. Katie and Yeager went into convulsions, from which Yeager died about four hours later. After the police and an ambulance were summoned, Katie informed the officers of Vigno's role. Under a garbage can, the officers found Katie's wallet which contained a bag of speed.

The following morning, Inspector Burgess of the Marin County Drug Abuse Bureau picked up Vigno on suspicion of manslaughter and sale of dangerous drugs and questioned him. Vigno identified the supplier of the speed as a white male named Everett, about 40 years old, who lived in an apartment at 1308-4th Avenue in San Francisco, and gave Burgess defendant's telephone number. He had previously obtained speed from "Everett."

About 11 a.m., Vigno drove past the house with several officers and pointed out defendant's apartment to them. About 11:15 a.m., Vigno made a telephone call to defendant from a telephone booth in a nearby service station to a number registered to a Sharon Goad at 1308-4th Avenue. Narcotics Agent Ohlsen, who was in the booth with Vigno, overheard him say: "This is Ricky. Could I get something?" and then later adding "I'll be by around 3 o'clock." At the conclusion of the conversation, Vigno told the officers he had talked to defendant.

The officers began a surveillance of defendant's apartment and after observing someone enter decided to arrest defendant for the sale of restricted dangerous drugs to a minor (Health & Saf. Code, § 11913). Inspectors Burgess and Pohley proceeded to the front door, while Officers Ohlsen and Logan went to the back door. The two officers in front were to ring three times to let the officers in the rear know they were in position. After Burgess rang four times, defendant came to the door and looked out the door's

glass pane. After Burgess identified himself, defendant disappeared from view. Burgess and Pohley, thinking that defendant was attempting to flee and intending to arrest him, tried to force open the front door. Meanwhile, Officers Ohlsen and Logan at the rear heard the bell signal and then some footsteps running from the front to the back of the house. They forced open the back door, entered, and then opened the front door to admit Burgess and Pohley. Rudolfo Duke, who was in the back bedroom, threw a package to the floor when he saw the officers. Duke and defendant were arrested and the house searched, disclosing varying quantities of speed powder and pills, chemicals used in its manufacture, eyedroppers and needles, as well as two letters addressed to defendant, all of which were subsequently admitted into evidence.

We need not set forth defendant's testimony as the jury apparently gave it no credence. Suffice it to state that it amounts to a denial or refutation of the prosecution's evidence and accuses the police of an unjustified entry at the time of his arrest.

We need not set forth in detail the facts of the second count involving the June 26, 1969 sale of speed, of which defendant was also convicted, as the only contention raised on appeal relating to that offense is one of law and concerns the entrapment instruction. Suffice it to state that defendant admitted selling one-half of an ounce of speed to a known reliable police informer on June 26, 1969, but denied ever selling speed to anyone on any other occasion.

On rebuttal, the People presented the testimony of Lois Stevenson, who lived in the upper flat at 1306-4th Avenue, had purchased speed from defendant and had seen him sell speed to four other named individuals. Defendant, on surrebuttal, testified that he had not sold speed to any of the individuals named by Mrs. Stevenson.

Defendant's first major contention on appeal is that the trial court erred in permitting the testimony of the witness Vigno at the preliminary hearing to be read to the jury, after Vigno, upon being sworn, asserted his Fifth Amendment privilege and refused to testify.

The prosecution had stated that pursuant to Penal Code section 1324,[2]

---

[2]So far as pertinent, Penal Code section 1324 provides: "(a) In any felony proceeding . . . if a person refuses to answer a question or produce evidence of any other kind on the ground that he may be incriminated thereby, and if the district attorney of the county or the Attorney General in writing requests the superior court for that county to order that person to answer the question or produce the evidence, a judge of the superior court shall set a time for hearing and order the person to appear before the court and show cause, if any, why the question should not be answered or the evidence produced, and the court shall order the question answered or the evidence

it would move for an order directing Vigno to testify and would offer him immunity from prosecution. Defense counsel opposed the district attorney's motion as he was uncertain whether the grant of immunity[3] would apply to both federal and the state prosecutions. The defense also offered to provide Vigno with counsel of his own choosing.

The court expressed doubt about the matter of immunity[4] and ruled, over defendant's objection and pursuant to Evidence Code section 1291, that since Vigno had asserted his Fifth Amendment privilege, he was *"unavailable"* and his testimony at the preliminary hearing could be read to the jury.

Defendant contends that Vigno was not an "unavailable witness" under Evidence Code sections 1290 and 1291, and that the reading of Vigno's preliminary hearing testimony constituted a violation of defendant's Sixth Amendment right to confrontation (*Barber* v. *Page,* 390 U.S. 719 [20 L.Ed. 2d 255, 88 S.Ct. 1318]; *Berger* v. *California,* 393 U.S. 314 [21 L.Ed.2d 508, 89 S.Ct. 540]).

The nature of the right was defined by our Supreme Court recently in *In re Montgomery,* 2 Cal.3d 863, at page 867 [87 Cal.Rptr. 695, 471 P.2d 15]: "The ability of the fact finder to evaluate a witness' credibility is severely hampered when such witness is absent and when his prior testimony is read into evidence. [Citation.] Only if the necessity, due to the witness' *unavailability,* is clearly demonstrated may the defendant's right of confrontation be overcome, *for this right is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the trier of the fact to weigh the credibility of the witness."* (Italics added).

But the required *"unavailability"* is not limited to the situation where the witness is beyond the jurisdiction of the court and "good faith" efforts have been made by the prosecution to find him and secure his attendance. In *California* v. *Green* (1970) 399 U.S. 149 [26 L.Ed.2d 489, 90 S.Ct. 1930], the U. S. Supreme Court held that the accused's constitutional right to confrontation was not violated by the reading of the testimony at the preliminary hearing of a witness who at the trial could not remember the details of the transaction. The court also noted that for purposes of the confrontation clause, there is no significant difference between a witness

---

produced unless it finds that to do so would be clearly contrary to the public interest, or could subject the witness to a criminal prosecution in another jurisdiction, and that person shall comply with the order."

[3]Vigno had apparently been granted immunity pursuant to Penal Code section 1324 at the time of his testimony at the preliminary hearing.

[4]Actually, the U. S. Supreme Court had held in *Murphy* v. *Waterfront Com'n. of New York Harbor* (1964) 378 U.S. 52 [12 L.Ed.2d 678, 84 S.Ct. 1594], that state immunity also bars federal prosecution.

who fails to testify about an alleged offense because he cannot remember or is unwilling to do so for fear of self-incrimination (see *Dutton* v. *Evans,* 400 U.S. 74 [27 L.Ed.2d 213, 91 S.Ct. 210]).

In *People* v. *Williams,* 265 Cal.App.2d 888 [71 Cal.Rptr. 773], where the question was the propriety of reading the absent witness' testimony from the transcript of the prior trial that had been reversed, we held at page 892: "Evidence Code section 1291 provides in part that 'Evidence of former testimony is not made inadmissible by the hearsay rule if the declarant is *unavailable as a witness* and . . . [t]he party against whom the former testimony is offered was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing.' (Italics added.)

"Evidence Code section 1290, subdivision (a), defines 'former testimony' to include testimony given under oath in a former trial of the same action.

"Evidence Code section 240, so far as pertinent herein, provides that a declarant who is '[e]xempted or precluded on the ground of privilege from testifying concerning the matter to which his statement is relevant' is 'unavailable as a witness.' In other words, a witness whose *testimony* is not available, even though he is present at the trial, is 'unavailable as a witness' within the meaning of Evidence Code section 1291. (Cf. *Johnson* v. *People* (1963) 152 Colo. 586 [384 P.2d 454].)"

■ But defendant contends that Vigno was not an "unavailable" witness since the court's refusal to grant immunity and force Vigno to testify was based on its mistaken understanding that the immunity would not extend to federal prosecution. Defendant is in no position to raise this point as defense counsel *himself* urged the ruling upon the court, objected to the granting of immunity, and the defense offered to obtain independent legal assistance for Vigno's protection. We think this conduct constituted a waiver of defendant's right to confrontation.

Defendant cannot rely on *In re Tahl,* 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], and *Boykin* v. *Alabama,* 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]. These cases are authority for the proposition that the right of self-incrimination, confrontation and jury trial must be expressly enumerated for and expressly waived by the accused personally *prior to the acceptance of his guilty plea, as the entry of the plea concludes the matter.*

But here, where defendant had gone to trial, the right of confrontation had become a "trial right" (*In re Montgomery, supra,* p. 867) and thus had become a subject of trial tactics (*People* v. *Floyd,* 1 Cal.3d 694, 704 [83

Cal.Rptr. 608, 464 P.2d 64]; *People* v. *Williams,* 2 Cal.3d 894, 905 [88 Cal.Rptr. 208, 471 P.2d 1008]). As such, defendant's right of confrontation is subject to waiver by his counsel in defendant's presence and without his objection.

The People correctly analogize the instant case to *People* v. *Foster,* 67 Cal.2d 604 [63 Cal.Rptr. 288, 432 P.2d 976], where it was held that defense counsel could waive the right to confrontation by stipulating in defendant's presence and without his objection that the testimony of a witness at the preliminary hearing could be given the same force and effect as though the witness had testified at the trial.

Whether to call a certain witness is generally a matter of trial tactics (*People* v. *Williams,* 2 Cal.3d 894, 905 [88 Cal.Rptr. 208, 471 P.2d 1008]) and thus, whether to acquiesce in the granting of immunity to a potentially dangerous witness is likewise a matter of trial tactics. Although the transcript of the preliminary hearing is not before us, both sides agree that Vigno was granted immunity at that time and the record so indicates. Under these circumstances, we think defense counsel's objection to the granting of immunity to Vigno at the trial, acquiesced in and understood by defendant, constituted a waiver of defendant's constitutional right to confrontation for tactical reasons.

We are supported in this conclusion by defendant's attempt to recall Vigno after the latter allegedly had indicated he wished to recant. ▮ We conclude that the admission of Vigno's prior testimony on the ground that he was an unavailable witness was proper and did not constitute prejudicial error.

▮ Defendant maintains that the trial court's failure to hold a more complete hearing on Vigno's willingness to recant the testimony he gave at the preliminary constituted prejudicial error. In view of Vigno's strongly asserted prior refusal to testify for either side on constitutional grounds, we question whether the court abused its discretion in the summary denial of the defense motion to recall Vigno. However, even assuming an abuse of discretion and that Vigno had in fact recanted, in view of the overwhelming evidence against defendant, including the contraband found in his home, there is no reasonable possibility that the jury would have been dissuaded by such recantation from arriving at a verdict against defendant (*Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065]).

▮ Defendant's next contention on appeal relates to his arrest on September 27, 1968. He argues that all of the evidence seized at his apartment on that occasion should have been excluded as Vigno was an unre-

liable informant and thus there was no reasonable probable cause for the arrest and further, that the police, in breaking into his home, failed to comply with Penal Code section 844.

The record here indicates that besides the information furnished by Vigno and prior to the arrest of defendant, the officers knew of: 1) the discovery of methedrine at the apartment where Yeager died; 2) the information provided by Katie Oatis as to Vigno's role in the acquisition of the drug that she and Yeager took; 3) the confirmation by the telephone company that the telephone number initially provided and subsequently used by Vigno to phone defendant was registered to a person at the address supplied by Vigno when he pointed out defendant's apartment; 4) the telephone call Vigno made to the address he represented as defendant's and Vigno's part of the conversation which was overheard by an officer and *indicated* the other party's willingness to engage in a sale of a dangerous drug; and 5) the fact that when defendant appeared in the glass pane of the door, he fit the description supplied by Vigno, and the fact of his subsequent disappearance from view and the footsteps running from the front to the back of the apartment.

While information provided by an informant of unknown reliability is in and of itself not sufficient to provide probable cause for an arrest, such information is sufficient if it is corroborated in essential respects by such other facts, sources or circumstances as would justify the conclusion that reliance on the information was reasonable (*People* v. *Talley,* 65 Cal.2d 830, 835-836 [56 Cal.Rptr. 492, 423 P.2d 564]; *People* v. *Davis,* 2 Cal. App.3d 230 [82 Cal.Rptr. 561]). Such corroboration need not itself amount to reasonable cause to arrest but its only purpose is to provide the element of reliability that is missing when the police have had no prior experience with the particular informer. Accordingly, it is sufficient if it gives the officers reasonable grounds to believe that the informant is telling the truth for the issue is " 'not whether the information obtained by the officers emanated from a reliable source, but whether the officers could reasonably rely upon that information under the circumstances.' " (*People* v. *Lara,* 67 Cal.2d 365, 375 [62 Cal.Rptr. 586, 432 P.2d 202]; *People* v. *Rigsby,* 18 Cal.App.3d 38 [95 Cal.Rptr. 585].)

The corroborative facts here are much stronger than in *People* v. *Fein,* 4 Cal.3d 747 [94 Cal.Rptr. 607, 484 P.2d 583], *People* v. *Gallegos,* 62 Cal.2d 176 [41 Cal.Rptr. 590, 397 P.2d 174], and *People* v. *Amos,* 181 Cal.App.2d 506 [5 Cal.Rptr. 451], and meet the stringent standard required in arrest without a warrant. The conduct of defendant, as recounted by the officers, was reasonably interpreted to be furtive, and together with the other four of the five items of information listed above,

provided sufficient grounds for the officers to rely on Vigno's statements (*People* v. *Superior Court,* 3 Cal.3d 807 [91 Cal.Rptr. 729, 478 P.2d 449]).

■ Defendant argues that the police failed to comply with section 844 of the Penal Code, which authorizes police officers to make a forcible entry into a home for the purpose of effecting an arrest if the officers first identify themselves as officers, demand admittance, and explain the purpose for which their admittance is desired. ■ The basis for the requirement is found in the individual's right to privacy and the policy of discouraging the creation of confrontations conducive to violence (*Greven* v. *Superior Court,* 71 Cal.2d 287 [78 Cal.Rptr. 504, 455 P.2d 432]).

■ However, literal compliance with Penal Code section 844 is not required in every case (*People* v. *Marshall,* 69 Cal.2d 51, 55 [69 Cal.Rptr. 585, 442 P.2d 665]). Officers are deemed to have substantially complied if, prior to entry, the officers have given notice of their presence and identified themselves and if the surrounding circumstances made the officers' purpose clear to the occupants or showed that a demand for admission would be futile (*People* v. *Rosales,* 68 Cal.2d 299, 304 [66 Cal.Rptr. 1, 437 P.2d 489]). Furthermore, strict compliance may be excused where the officers reasonably and in good faith believe that the purpose of entry is already known to the occupant or that complete technical compliance with the statute would permit destruction of the evidence (*People* v. *Ambrozic,* 8 Cal.App.3d 867, 872 [87 Cal.Rptr. 899]).

■ Here, the officers approached defendant's apartment by both the front and rear entrances. The officers at the front door gave the prearranged signal of ringing three times and when defendant looked out the door's glass pane, identified themselves and asked him to open the door. Simultaneously with defendant's disappearance from view at the front of the apartment, the officers waiting at the back door heard the bell signal and the sound of footsteps running from the front to the back. Thereafter, they forced the door and entered the house.

We hold that there was substantial compliance with the requirements of the statute when the officers rang the front door bell, identified themselves, and demanded admission at the front door (*People* v. *Garber,* 275 Cal.App. 2d 119, 125, 131-132 [80 Cal.Rptr. 214]). As soon as the officers at the back door heard the running footsteps, strict compliance with section 844 was excused as it was then reasonable for them to believe that defendant was attempting to flee or destroy evidence (*People* v. *De Santiago,* 71 Cal.2d 18, 28-29 [76 Cal.Rptr. 809, 453 P.2d 353]; *People* v. *Carrillo,* 64 Cal.2d 387 [50 Cal.Rptr. 185, 412 P.2d 377]).

 Defendant's next major contention is that all of the testimony concerning the death of Richard Yeager was irrelevant and sufficiently prejudicial and inflammatory to warrant a reversal of the judgment.

Except as otherwise provided by statute, all relevant evidence is admissible (Evid. Code, § 351). Relevant evidence is defined as that having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the act (Evid. Code, § 210). Generally, if evidence in a criminal trial is material and relevant, it is admissible if its probative value outweighs its possible prejudicial effect (*People* v. *Ford,* 175 Cal.App.2d 109, 114 [345 P.2d 573]). It is the responsibility of the trial court to determine whether the probative value of the evidence outweighs the possibility of prejudice (*People* v. *Stanworth,* 71 Cal.2d 820 [80 Cal.Rptr. 49, 457 P.2d 889]; Evid. Code, § 352).

 Here, it is hard to see how the sequence of events that led to the apprehension of defendant could have been logically presented to the jury, without any reference to the facts and circumstances surrounding Yeager's death (*People* v. *Lyons,* 4 Cal.App.3d 662, 666 [84 Cal.Rptr. 535]). The order of proof in a criminal trial likewise lies within the sound discretion of the trial court and the exercise of such discretion will not be disturbed on appeal in the absence of a palpable abuse (*People* v. *Henley,* 269 Cal.App.2d 263, 268 [74 Cal.Rptr. 611]). Accordingly, we conclude that these matters were relevant and the trial court did not abuse its discretion in admitting them.

 Defendant further asserts that there was no need for the testimony of the pathologist which served only to inflame and prejudice the jury. However, we think that the trial court properly concluded that this testimony was necessary to show the presence of the drug in the body of the deceased and to rebut the repeated implications by the defense that Yeager's death was caused by the small size of his pituitary gland. Furthermore, any possible prejudice to defendant was vitiated by the court's cautionary instruction to the jury during the initial testimony, to the effect that the death of Yeager was admissible *only* because of its evidentiary connection with the offense charged and should not be given any emotional consideration in the determination of their judgment. We must presume that the jury followed the court's admonition and did not allow the *fact of Yeager's death* to impassion or prejudice its judgment (*People* v. *Henley, supra,* pp. 270-271).

Defendant has made several additional contentions which we dispose of summarily.

 Evidence of defendant's subsequent narcotics offense was clearly

admissible to show guilty knowledge, motive, intent or presence of common scheme and design (*People* v. *Sam,* 71 Cal.2d 194, 204 [77 Cal.Rptr. 804, 454 P.2d 700]; *People* v. *Perkins,* 7 Cal.App.3d 593, 602 [86 Cal.Rptr. 585]; *People* v. *Durham,* 70 Cal.2d 171, 181 [74 Cal.Rptr. 262, 449 P.2d 198]; *People* v. *Griffin,* 66 Cal.2d 459 [58 Cal.Rptr. 107, 426 P.2d 507]; Evid. Code, § 1101, subd. (b)). Here, defendant's intent to sell was in issue. The court properly instructed on the limited application of the evidence. *People* v. *Williams,* 11 Cal.App.3d 970 [90 Cal.Rptr. 292], cited by defendant, does not support the contention that the court's instruction was erroneously incomplete.

▇▇▇ The court did not err in refusing to continue the trial to permit defendant to obtain certain surrebuttal witnesses. Defendant did not make an adequate offer of proof of content. Furthermore, the purported testimony concerned only the impeachment of the prosecution witness Stevenson on the collateral matter of proof of other crimes to establish intent, etc., and in view of the overwhelming evidence of defendant's guilt (*Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]), could not possibly have affected the outcome of the case. Under the circumstances, there was no abuse of the court's discretion (*People* v. *Johnson,* 5 Cal.App.3d 851 [85 Cal.Rptr. 485]; *People* v. *Coleman,* 263 Cal.App.2d 697 [69 Cal.Rptr. 910]).

▇▇▇ Defendant objects, because the court gave its own instruction on entrapment, instead of CALJIC No. 851. We have carefully considered the court's instruction and conclude that it accurately enunciates the law of entrapment (*People* v. *Rice,* 10 Cal.App.3d 730, 744 [89 Cal.Rptr. 200]). The court's instruction properly states that whether the defense of entrapment is available is dependent upon whether the intent to commit the crime originated in the mind of the accused or in the mind of the entrapping officer (*People* v. *Moran,* 1 Cal.3d 755, 760 [83 Cal. Rptr. 411, 463 P.2d 763]; *People* v. *Benford,* 53 Cal.2d 1, 10 [345 P.2d 928]; *People* v. *Glaser,* 265 Cal.App.2d 849, 852 [71 Cal.Rptr. 706]; *People* v. *Amata,* 270 Cal.App.2d 575, 582 [75 Cal.Rptr. 860]; *People* v. *Sweet,* 257 Cal.App.2d 167, 170 [65 Cal.Rptr. 31]).

The judgment, is affirmed, and the purported appeal from the order denying the motion for a new trial is dismissed.

Shoemaker, P. J., and Kane, J., concurred.

A petition for a rehearing was denied September 17, 1971, and appellant's petition for a hearing by the Supreme Court was denied November 11, 1971.