[Crim. No. 4637. Fourth Dist., Div. One. Oct. 27, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
CLAUDE LEAL DEES, Defendant and Appellant.

## COUNSEL

G. Dennis Adams, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Jay D. Coulter, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**AULT, J.**—Defendant Claude Leal Dees appeals from the judgment of conviction (order granting probation) entered after he pleaded guilty to possession of narcotics (Health & Saf. Code, § 11500). At the time he entered his plea, a second count charging possession of narcotic paraphernalia was dismissed, and an allegation of a prior conviction was stricken. On appeal, the defendant seeks a review of the denial of his

motion to suppress evidence under Penal Code section 1538.5 which preceded his plea.[1]

At the hearing on the motion to suppress evidence, the People stipulated the police officers who arrested Dees entered the apartment in which he was arrested without complying with Penal Code section 844 and had no search warrant. Also by stipulation, the motion was heard and determined on the testimony taken at Dees' preliminary hearing together with the testimony at the preliminary hearing in the related case of People v. Austin.

Insofar as pertinent to this appeal, the evidence at the two preliminary hearings shows: On March 13, 1970, at approximately 1:45 p.m., Parole Officer Charles Pasquel (Paschal-?), accompanied by San Diego Police Officers Leigh Emmerson and Clifford Collins, went to apartment "J" at 2536 "B" Street, San Diego. Their purpose was to arrest the tenant, Lamont Rollins, a parole violator. Pasquel knocked on the door and no one answered. He then opened the door, entered, and called out the name "Lamont" several times. Receiving no answer, he asked the police officers to enter the apartment. Investigation showed no one to be home. The officers observed a broken window in the front door and spattered blood throughout the apartment. At Pasquel's request, the apartment was searched. A bag of marijuana and several narcotic injection kits were found. The officers waited, hoping Rollins would return to the apartment. At approximately 3 p.m. they left, leaving word with the manager to call them if anyone returned to the apartment. They took the items of contraband found in the search with them.

At approximately 4:30 that afternoon the manager telephoned the police and stated three persons were in the apartment. The call did not reveal whether parolee Rollins was one of the three. Pasquel, accompanied by four police officers, including Emmerson and Collins, returned to the apartment. The door was ajar, and Pasquel, followed by the officers, entered without complying with Penal Code section 844.[2] The officers found three persons in the apartment. Rollins was not present. They also observed a Tuinol capsule on a buffet near where the three persons were standing. The capsule had not been present when the police were in the apartment earlier in the afternoon. The three persons were placed under arrest.

At about this time the defendant Dees was observed as he entered the

---

[1]Defendant's earlier petition for writ of prohibition to this court was denied without opinion (4 Civ. No. 10632).

[2]While a parolee's residence may be searched by his parole officer, who may have the assistance of ordinary peace officers, without a search warrant, compliance with Penal Code section 844, before entering the residence is required. (*People* v. *White*, 270 Cal.App.2d 680, 681-682 [76 Cal.Rptr. 104]; *People* v. *Rosales*, 68 Cal.2d 299, 303-304 [66 Cal.Rptr. 1, 437 P.2d 489].)

apartment. He did not knock or call attention to his entry. He started to walk toward Officer Emmerson, looked at the officer, turned, walked into a bedroom and then went into a bathroom. Officer Emmerson approached the bathroom through the kitchen and saw Dees standing over the commode. He heard a sound of something splashing in the water and looked down into the commode. There he saw a syringe with a needle. In Dees' left hand he observed a plastic bag containing nine bindles of what later proved to be heroin. Emmerson grabbed Dees and, with the help of other officers, took the heroin by forceful action. The motion to suppress was directed to the heroin and to the syringe and needle taken from the commode.

 Because the police officers' entry into the apartment did not comply with the requirements of Penal Code section 844, Dees contends the contraband seized at the time of his arrest should have been suppressed as "the fruit of the poisonous tree" under the holding of *Wong Sun* v. *United States,* 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407]. We disagree.

The only connection between the seizure of the contraband in this case and the entry of the police into the apartment was the fact of police presence to observe the illegal acts. The court in *Wong Sun* rejected the "but for" rule as the test for tainted evidence. "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' [Citation.]" (*Wong Sun* v. *United States,* 371 U.S. 471, 488 [9 L.Ed.2d 441, 455, 83 S.Ct. 407].)  The same distinction was made by this court in *People* v. *White, supra,* 270 Cal.App. 2d 680, 682, where we said: "An illegal entry does not necessarily render the entered premises immune to any later search. The question is whether the search is so connected with the illegal entry it constitutes an 'exploitation of that illegality.'"

 In the instant case, Dees was not a tenant of the premises entered by the police. He was not present in the premises at the time the entry was made. The contraband was not in the apartment at the time the police entered. Dees brought it with him when he made his own later unannounced entry. His rights were completely unaffected by any illegal entry of the police and the seizure of the contraband he displayed in plain sight was in no sense an "exploitation of that illegality."

 The two-fold purpose of the rules contained in Penal Code section 844, requiring police officers before entering a home to make an

arrest to identify themselves, demand admittance and announce their purpose, is to protect the individual's right of privacy in his home and to guard against harm to both the occupants of the home and the police, by discouraging confrontations conducive to violence (*People* v. *Hill,* 19 Cal. App.3d 306, 318 [96 Cal.Rptr. 813]; *Greven* v. *Superior Court,* 71 Cal.2d 287, 292 [78 Cal.Rptr. 504, 455 P.2d 432]). ▉ Neither of these purposes would be served by applying the restrictive evidentiary rules which follow a violation of the section to a stranger who came into the home long after the police had entered, bringing contraband which he attempted to dispose of in their presence. Under the circumstances of this case, Dees was simply not a person Penal Code section 844 was designed to affect or protect.

The order is affirmed.

Brown (Gerald), P. J., and Coughlin, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.