Filed 7/30/14  P. v. Le CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>OPHUS HUYNH LE,<br><br>    Defendant and Appellant. | H039131<br>(Santa Clara County<br>Super. Ct. No. C1229586) |

Defendant Ophus Huynh Le was convicted following a jury trial of manufacturing cocaine base (Health & Saf. Code, § 11379.6, subd. (a)), possession of cocaine base for sale (*id*., § 11351.5), possession of cocaine for sale (*id*., § 11351), and possession of methamphetamine for sale (*id*., § 11378).  He was given a blended sentence pursuant to Penal Code section 1170, subdivision (h)(5)(B) of seven years in prison to be served in county jail and one year four months of supervised release.  On appeal, defendant argues the trial court improperly admitted several statements he made, because they were either inadmissible hearsay or inadmissible under Evidence Code section 1101, subdivision (a). We conclude the trial court did not abuse its discretion when it admitted the statements and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

*The Information*

On September 10, 2012, defendant was charged by information with manufacturing cocaine base (Health & Saf. Code, § 11379.6, subd. (a); count 1),

possession or purchase of cocaine base for sale (*id*., § 11351.5; count 2), possession or purchase of cocaine for sale (*id*., § 11351; count 3), and possession of methamphetamine for sale (*id*., § 11378; count 4). With respect to counts 2 and 3, it was alleged defendant possessed sufficient quantities of the substances such that the court could only grant probation "in an unusual case where the interests of justice would best be served." (Pen. Code, § 1203.073, subd. (a).) It was also alleged defendant served a prior prison term. (*Id*., § 667.5, subd. (b).)

*The Jury Trial*

**Prosecution's Case**

On March 30, 2012, San Jose Police Officer Bret Moiseff was watching a house on McLaughlin Avenue in San Jose where he had previously arrested individuals for possession of crack cocaine. He observed a man he believed was the primary seller at the house walk out and make several phone calls. A Toyota minivan arrived, and Moiseff saw the seller make an exchange. Moiseff followed the minivan to a house on Park Estates Way in San Jose. He passed the investigation to Police Officers Nick Byrd and Jenni Byrd.[1]

The Byrds (the officers) arrived at the Park Estates Way house in the afternoon and watched a minivan leave with two female occupants. They stopped the car after it made numerous traffic violations. Thuy Pham, the driver, had crack cocaine and two bindles of methamphetamine in her purse. Pham's sister, the passenger, had $1,967 in cash in her purse. During the traffic stop, Pham's cell phone rang about 16 times.

The officers returned to the house on Park Estates Way at approximately 3:00 p.m. and secured the house prior to receiving a search warrant. While securing the house, Nick Byrd made contact with defendant, who was sleeping upstairs in the master bedroom.

---

[1] Police Officers Nick and Jenni Byrd are married to each other.

The officers received a search warrant at approximately 9:52 p.m. that day. While searching the master bedroom they found a green card, a social security card, and a checkbook in Pham's name in a nightstand. The nightstand also contained a crack pipe made from a baby food jar and a crushed pill. There was a brick of cocaine weighing approximately 251 grams in the closet of the master bedroom.[2] Next to the cocaine brick were two smaller baggies containing approximately 253 grams of powdered cocaine hidden in folded towels. Also in the closet was an AWS digital scale underneath some clothing. There were men's and women's clothing hanging in the closet, including shirts that were similar to a shirt officers found next to the bed where defendant was found earlier.

Inside the bathroom of the master bedroom, the officers found a glass pipe, plastic baggies, and documents belonging to Pham. There was a digital WeighMax scale in the bathroom cabinet with cocaine-like powder. Three Pyrex measuring cups were on the counter. One of the cups was filled with a clear liquid containing white particles. There was a pair of scissors with white powder on the blades and a glass container filled with what looked like baking soda. There was also a microwave oven on a chair. In a drawer, officers found a baggie containing 3.1 grams of methamphetamine, a baggie containing approximately 26.7 grams of crack cocaine, and a silver digital scale.

The officers found a suitcase in a bedroom across the hall containing $300. There were two security cameras outside the house and two cameras inside the house. The officers confiscated an iPhone in defendant's possession and recovered data, including call logs and images. Defendant had been monitoring the security camera feeds using his cell phone.

---

[2] The parties stipulated that the items found in the master bedroom were tested and positively identified to be cocaine, cocaine base, and methamphetamine.

3

There was a fingerprint on the silver scale found in the bathroom, later determined to be from defendant's left little finger. A fingerprint on the AWS scale in the bedroom closet was determined to be a print from Pham's right index finger.

Officer Moiseff testified as an expert in narcotics investigations. He provided testimony on how much he believed the drugs were worth. Moiseff opined the Park Estates Way house was being used to manufacture cocaine base, and the drugs found in the master bedroom and bathroom were possessed for the purpose of sale.

Pham testified she had pleaded guilty to several drug-related offenses stemming from her arrest, but had not yet been sentenced. She faced up to 12 years and four months in prison but was told by the judge if she testified she could be sentenced to a year in county jail followed by a period of probation.

Pham had known defendant for 16 to 17 months, because he was the boyfriend of her friend, Anita Nguyen. Defendant and Nguyen had moved into Pham's house on Park Estates Way approximately two months before the arrest, because Pham was having money problems. Nguyen had moved out several days before the arrests. Pham and defendant had a sexual relationship after Nguyen moved out. Nguyen and defendant paid rent and stayed in the master bedroom. Before defendant moved in, the microwave was in the kitchen. Defendant and Nguyen moved the microwave into the master bedroom and defendant suggested installing surveillance cameras.

Pham asserted defendant taught her how to make crack cocaine, which Nguyen also made. She said when she was arrested she was delivering crack cocaine for defendant, which she had been doing for two to three months. Pham explained the manufacturing process to make crack cocaine using the items found in the master bedroom's bathroom.

The officers had found drugs in the steering column of the minivan when they searched her vehicle. Pham asserted these drugs came from the Park Estates Way house,

4

and defendant had shown her how to hide drugs in the steering column. Pham said she had seen defendant smoke crack cocaine from a pipe made from a baby food jar.

Pham testified she was unaware there was more than a pound of cocaine in the master bedroom closet the day of her arrest. However, she said it was not uncommon to have that much drugs in the house. She did not know where the drugs came from; when they needed to make crack cocaine defendant would bring drugs to the house and give some to her. Pham said they made drugs every other day.

The prosecution played a recording of a telephone conversation between defendant and Nguyen made from the Santa Clara County jail on March 30, 2012, after defendant's arrest. The conversation was partly in English and partly in Vietnamese, and a transcript was introduced as evidence. During the conversation, defendant told Nguyen about the officers' search of the house. He also told Nguyen about a conversation he had with Pham and Pham's sister after the police had arrived. Defendant said Pham's sister told him he should work for the police, and asked Pham, "how come when he go he does not get caught and when we go we get caught." (*Sic*.) Nguyen said she did not understand what defendant meant, and defendant clarified that Pham's sister meant, "I [defendant] make the delivery nothing happened. They [Pham and her sister] make the delivery and get caught." (*Sic*.)

**Defendant's Case**

Defendant testified on his own behalf. He was addicted to crack cocaine and had been using drugs since 1996. Because of his addiction, he spent time with drug dealers and other users.

Defendant asserted Pham would occasionally give him drugs, and he would also buy drugs himself. He had been staying at Pham's house for approximately a week, sleeping on the downstairs couch. Nguyen had stayed over a few nights. Prior to staying at Pham's house, defendant had been sleeping under a bridge. Pham saw him there when

5

she was delivering drugs and took him home.  Defendant cleaned and took care of Pham's children on the weekends.

The day of the arrest, defendant was in the master bedroom because Pham had told him she was going to Los Angeles so he could watch television and sleep upstairs until she returned.  The shirt next to the bed belonged to him, but none of the other clothes in the bedroom were his.  When defendant moved into the Park Estates Way house, he cleaned up the master bathroom and moved the scale.  He did not know there were drugs in the closet.

Defendant said he knew Pham was a drug dealer and when he moved in she had asked him to move some of the equipment she used to make crack cocaine upstairs to the bedroom.  He denied teaching Pham how to make drugs, and insisted Pham attempted to teach him how to make drugs.  Defendant said he did not want to learn, and denied he was a drug dealer.  He explained Pham's sister's comment about how he did not get stopped by the police meant she was implying he worked for the police.  He maintained he had never made drug deliveries.

Defendant testified about a conversation he had with Nguyen when he was in jail.  During the conversation, defendant and Nguyen used the Vietnamese word "banh," which means "cake," to refer to crack cocaine.  Defendant had asked Nguyen how much money she was making, and Nguyen replied that she would be able to get some "banh" on a Friday.  Defendant told Nguyen to buy from someone else, and advised her to remember to wash her hands thoroughly after she cut the "stuff."  Defendant also testified about the conversation he had in March 2012 with Nguyen, where he said he went to Pham's house to "work."[3]  Defendant explained he meant he went to Pham's house to

---

[3] Officer Moiseff testified that during his investigations, he often saw text messages asking about "work" or "working," and in the drug subculture this often refers to whether the person was selling drugs.

6

clean.  He admitted it was his voice on the recording telling Nguyen that "I make delivery and nothing happened, they make delivery and get caught."  (*Sic*.)

*The Verdict and Sentence*

The jury returned a verdict on September 17, 2012, finding defendant guilty of all counts.  The jury returned a true finding for the quantity allegations alleged in count 2 (Pen. Code, § 1203.073, subd. (b)(5)) and count 3 (*id*., subd. (b)(1)).  On September 28, 2012, defendant admitted he served a prior prison term.  In December 2012, the court sentenced defendant to a total of seven years in prison followed by a term of one year four months on mandatory probation supervision pursuant to Penal Code section 1170, subdivision (h).

**DISCUSSION**

1. *Admission of Defendant's Statement Recounting the Conversation with Pham and Her Sister*

When Pham's sister, Pham, and defendant were waiting in the Park Estates Way house after the officers had secured the premises, Pham's sister told defendant he should work for the police and made a comment to Pham about how they were caught when they went to make a delivery.  Later, defendant recounted this story in a recorded phone call made from jail to Nguyen.  During the phone call, defendant told Nguyen of Pham's sister's statement.  When Nguyen stated she did not understand the statement, defendant explained that Pham's sister meant when they made deliveries, they got caught, but when he made deliveries, he did not get caught.  Defendant argues the court erred in admitting evidence of this statement as an adoptive admission.

Hearsay is "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated."  (Evid. Code, § 1200, subd. (a).)  Hearsay is inadmissible unless it qualifies under one of the exceptions to the hearsay rule.  "A statement by someone other than the defendant is admissible as an adoptive admission if the defendant 'with knowledge of the content

7

thereof, has by words or other conduct manifested his adoption [of] or his belief in its truth.' (Evid. Code, § 1221; see *People v. Preston* (1973) 9 Cal.3d 308, 314 & fn. 3.)" (*People v. Davis* (2005) 36 Cal.4th 510, 535.)

"In determining whether a statement is admissible as an adoptive admission, a trial court must first decide whether there is evidence sufficient to sustain a finding that: (a) the defendant heard and understood the statement under circumstances that normally would call for a response; and (b) by words or conduct, the defendant adopted the statement as true. [Citations.] Generally, this requires separately examining each excerpt of the tape-recorded conversations." (*People v. Davis*, *supra*, 36 Cal.4th at p. 535.)

Furthermore, "[e]vidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party in either his individual or representative capacity, regardless of whether the statement was made in his individual or representative capacity." (Evid. Code, § 1220.) "Broadly speaking, an appellate court applies the abuse of discretion standard of review to any ruling by a trial court on the admissibility of evidence." (*People v. Waidla* (2000) 22 Cal.4th 690, 717.)

The details of the conversation in question were introduced as evidence by the prosecution in a taped jail phone call between defendant and Nguyen on March 30, 2012, after defendant's arrest. In the recording, defendant told Nguyen that Pham's sister had said he should work for the police because when he "went" he did not get caught and when they went, they got caught. Nguyen indicated she did not understand what Pham's sister meant, and defendant clarified she meant when he made deliveries, nothing happened, but when they made deliveries, they were stopped by the police. Defendant laughed while making the comments.

At trial, defendant's counsel objected to the introduction of the statement, arguing it was hearsay and not subject to any exceptions. The prosecution countered, asserting the statement could be introduced either as an adoptive admission or as a statement made by a coconspirator. The trial court subsequently determined the adoptive admissions

8

exception applied, because defendant recounted the conversation between Pham's sister and Pham to Nguyen and did not deny the contents of the statement.

Defendant argues in order for his "silence to be construed as the adoption of an accusatory statement made in his presence, the statement must have been made under circumstances that afforded him a fair ' "opportunity to hear, understand, and to reply, and which do not lend themselves to an inference that he was relying on the right of silence guaranteed by the Fifth Amendment to the United States Constitution," ' " quoting *People v. Jennings* (2010) 50 Cal.4th 616, 661. Defendant argues the conversation he had with Pham and her sister was made while all three were in the house with police officers. Furthermore, there was evidence defendant had invoked his Fifth Amendment right against self incrimination when he was arrested. Defendant therefore insists the police officers' presence in the home and his invocation of his right against self incrimination lends to the inference he relied on his right to remain silent when he did not respond to Pham's sister's comment when it was made.

Defendant has mischaracterized the issue. The People did not seek to introduce Pham's sister's statement through testimony of the officers who were present in the house during the conversation in question, when defendant's silence may not necessarily have been admissible as an adoptive admission. Instead, the People introduced the statement through defendant's jail call to Nguyen when he repeated the statement. During this jail call, defendant not only recounted the statement but went further to explain its meaning-- "I [defendant] make the delivery nothing happened. They [Pham and her sister] make the delivery and get caught." (*Sic.*) There is nothing to suggest, in the context of the jail call to Nguyen, defendant was unable to freely deny the veracity of Pham's sister's comment. In fact, by explaining the comment to Nguyen and failing to deny it, defendant appeared to have adopted the statement.

We note " '[t]he mere recital or description of another's statement does not necessarily constitute an adoption of it: "[A] statement describing another's declaration

9

is normally not regarded as an admission of the fact asserted by the other. One does not admit everything he recounts or describes merely by reason of the relating of it." ' " (*People v. Hayes* (1999) 21 Cal.4th 1211, 1258.) However, it is well-settled that " ' "once the defendant has expressly or impliedly adopted the statements of another, the statements become *his own admissions*, and are admissible on that basis as a well-recognized exception to the hearsay rule." ' " (*People v. Cruz* (2008) 44 Cal.4th 636, 672.) " 'To warrant admissibility, it is sufficient that the evidence supports a reasonable inference that an accusatory statement was made under circumstances affording a fair opportunity to deny the accusation; whether defendant's conduct actually constituted an adoptive admission becomes a question for the jury to decide.' " (*People v. Riel* (2000) 22 Cal.4th 1153, 1189-1190.)

Here defendant did not merely recount Pham's sister's comment; he explained them, laughing to Nguyen while doing so. To the extent the statement was offered to prove the truth (Evid. Code, § 1200, subd. (a)) of the matter asserted therein--that when defendant made deliveries, he did not get caught, but when Pham's sister and Pham made deliveries, they got caught--defendant appeared to adopt the statement when he went further by clarifying its meaning for Nguyen, laughing while doing so. Therefore, the trial court did not abuse its discretion when it admitted the statement.[4]

2. *Admission of Defendant's Statements to Nguyen About Purchasing and Handling Drugs*

Next, defendant argues the trial court abused its discretion when it admitted the conversation he had with Nguyen about purchasing and handling drugs to prove his intent and motive (Evid. Code, § 1101, subd. (b)). Defendant contends the probative value of the statements did not outweigh its potential for prejudice. (*Id*., § 352.)

---

[4] Based on this determination, we need not address defendant's argument the statement was inadmissible under the coconspirator exception to the hearsay rule.

10

Evidence Code section 1101, subdivision (a) prohibits admission of evidence, including specific instances of uncharged misconduct, to prove conduct of the person on a specific occasion.  However, Evidence Code section 1101, subdivision (b), permits admission of evidence including uncharged misconduct when it is relevant to establish some fact other than the person's character, such as motive or intent.  When determining whether uncharged misconduct is relevant to prove intent, "[t]he least degree of similarity (between the uncharged act and the charged offense) is required . . . .  In order to be admissible . . . the uncharged misconduct must be sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent in each instance." ' " (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.)

Furthermore, uncharged misconduct is admissible only if it is relevant to issues other than a defendant's propensity to commit crimes and " 'must not contravene other policies limiting admission, such as those contained in Evidence Code section 352.' " (*People v. Ewoldt*, *supra*, 7 Cal.4th at p. 404.)  Pursuant to Evidence Code section 352, a trial court has discretion to exclude evidence if the probative value is substantially outweighed by the probability that its admission will:  "(a) necessitate undue consumption of time or (b) create a substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  We review a trial court's admission of a defendant's prior acts of misconduct for an abuse of discretion.  (*People v. Kipp* (1998) 18 Cal.4th 349, 369.)

The uncharged misconduct at issue arose from statements defendant made to Nguyen instructing her on handling drugs and advising her on where to purchase drugs.  Before defendant was cross-examined about this conversation the prosecution sought a ruling from the trial court on the admissibility of the evidence, arguing the conversation with Nguyen fell under the exception in Evidence Code section 1101, subdivision (b) and was relevant to demonstrate defendant acted with the intent to sell the drugs found in the Park Estates Way house.  Defendant objected, insisting this evidence should be excluded

11

as character evidence under Evidence Code section 1101, subdivision (a), because it had no direct relation to his charged offenses since he was merely advising Nguyen on aspects of her drug business.

The court determined evidence of defendant's other acts of misconduct were not admissible to establish defendant's knowledge that drugs were stored in the house. However, the court determined the acts of misconduct were admissible, because it was relevant to defendant's intent and motive.[5]

**Intent**

Defendant argues the trial court erred in admitting the evidence as relevant to his intent, because the presence of drugs in the house was proved beyond any doubt. Therefore, the main dispute at trial was whether defendant possessed or constructively possessed the drugs that were found; Pham testified the drugs belonged to defendant, and defendant denied ownership of the drugs. Defendant claims if he knew about the drugs and had the right to control the drugs, "intent, the issue on which the telephone conversation was ostensibly offered, was not material to the prosecution's case."

Defendant finds support in *People v. Lopez* (2011) 198 Cal.App.4th 698 (*Lopez*). In *Lopez*, this court determined the trial court erred in admitting evidence the defendant had previously burglarized a car in order to prove intent in the charged offense, a home burglary. We reasoned evidence of the prior misconduct did not have substantial probative value that would outweigh its prejudicial effect. (*Id*. at p. 715.) "Simply put, evidence of uncharged acts cannot be used to prove something that other evidence showed was beyond dispute; the prejudicial effect of the evidence of the uncharged acts outweighs its probative value to prove intent as it is cumulative regarding that issue."

---

[5] As defendant notes, the trial court did not expressly make a ruling on the admissibility of the evidence to prove intent and motive. However, it impliedly ruled the evidence was admissible, as it instructed the jury that evidence of defendant's prior acts of misconduct stemming from the phone conversation he had with Nguyen was relevant to intent and motive in the current case.

(*Ibid.*) "Assuming appellant committed the alleged conduct, his intent in so doing could not reasonably be disputed--there could be no innocent explanation for that act. Thus, the prejudicial effect of admitting evidence of a prior car burglary and prior car theft outweighed the probative value of the evidence to prove intent as to the Mendicino burglary charge." (*Ibid.*)

*Lopez*, however, is distinguishable. Contrary to defendant's assertion, his intent to possess the controlled substances for the purpose of sale was not "beyond dispute." (*Lopez*, *supra*, 198 Cal.App.4th at p. 715.) There was evidence that the drugs were meant to be sold. Officer Moiseff testified as an expert that in his opinion, the drugs found in the house were possessed for the purpose of sale. Additionally, Pham herself testified she made deliveries for defendant's drug business. However, defendant never conceded he intended to possess any drugs for the purpose of sale. He maintained he used drugs but never sold them. Therefore, the uncharged misconduct--defendant's supplying of advice to Nguyen on how to handle and sell drugs--was probative as to his intent to sell. Unlike in *Lopez*, if it was established defendant possessed the drugs found in the Park Estates Way house, it was not necessarily conclusive that defendant possessed the drugs for the purpose of sale. A jury could have believed defendant's testimony he used drugs and could have determined defendant possessed the drugs for his personal use. Accordingly, this evidence was not devoid of probative value.

Additionally, the there were sufficient similarities between the uncharged conduct and the charged crime. Defendant was charged with possession of drugs with the intent to sell. The uncharged misconduct involved defendant advising Nguyen on how to operate her drug business, and how to properly handle drugs. "The least degree of similarity (between the uncharged act and the charged offense) is required" when uncharged misconduct is offered to prove intent. (*People v. Ewoldt*, *supra*, 7 Cal.4th at p. 402.) Therefore, the trial court did not abuse its discretion in admitting the evidence to prove intent.

13

**Motive**

Defendant also insists the trial court erred in admitting the evidence as relevant to his motive, because the conversation between defendant and Nguyen took place after the charged offense. He argues in the cases illustrating the use of evidence of uncharged misconduct, the misconduct occurred prior to the charged offense, and therefore shed light on the reasons behind the defendant's alleged commission of the crime.

We reject defendant's contention on this point. Evidence of uncharged acts is admissible to prove something other than a defendant's propensity for committing crime, regardless of whether the uncharged offense took place prior to or subsequent to the charged offense. (See, e.g., *People v. Hill* (1971) 19 Cal.App.3d 306, 320 [defendant's subsequent narcotics offense was admissible to show "guilty knowledge, motive, intent or presence of common scheme and design"].) Therefore, it was not an abuse of discretion for the court to admit the uncharged misconduct to prove defendant's motive.

**Harmless Error**

In addition, even if the trial court erred in admitting the statements defendant made to Nguyen, we find no prejudice. The court instructed the jury it could consider the evidence only if the People proved by a preponderance of the evidence defendant actually committed the uncharged acts. Additionally, the court told the jury it was allowed to consider the uncharged act only for the limited purpose of determining if defendant acted with the intent to possess the controlled substances for the purposes of sale or if he had motive to commit the crime. The court admonished the jury from considering the evidence for other purposes, such as concluding defendant has a bad character or is predisposed to commit the crime.

Since we presume the jury followed the court's instructions, it is not reasonably probable exclusion of the evidence would have led to a different result. (*People v. Hovarter* (2008) 44 Cal.4th 983, 1005; see *People v. Welch* (1999) 20 Cal.4th 701, 749-

14

750 [applying the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836 to alleged Evid. Code, § 1101 error].)

3.  *Cumulative Error*

Lastly, defendant argues the cumulative effect of the errors made by the trial court warrants reversal of the judgment.  As we conclude the trial court did not err in admitting the challenged statements, we need not address his argument on this point.

**DISPOSITION**

The judgment is affirmed.

_____
                                                                 Premo, Acting P.J.

WE CONCUR:

_____
        Elia, J.

_____
        Mihara, J.

15